91 N.J. Super. 410 (1966)
220 A.2d 711
CAROL WILD AND STANLEY WILD, PLAINTIFFS-APPELLANTS,
v.
DR. EMANUEL ROMAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1965.
Decided June 8, 1966.
*412 Before Judges GAULKIN, LABRECQUE and BROWN.
*413 Mr. Albert L. Cohn argued the cause for appellants (Messrs. David & Albert L. Cohn, attorneys; Mr. Daniel Crystal, on the brief).
Mr. Charles C. Stalter argued the cause for respondent (Messrs. Stalter, Doan & DeYoe, attorneys; Mr. Aaron Dines, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiffs' true name is Wild. The pleadings shall be considered corrected accordingly.
Plaintiffs sued defendant dentist for malpractice. The jury returned a verdict in favor of defendant and plaintiffs appeal.
Plaintiffs contend that the trial judge erred when he charged the jury as follows:
"Now there was some dispute among counsel about the fact the statement was made that certain doctors whose names appeared in the case had not been called as witnesses. When a witness normally is not produced by a party, when it would be natural for such a person to produce the witness, then there might be an inference that if called he would have testified unfavorably to the plaintiff. However, it must be within the power of the party to produce him. He must be within the jurisdiction and it must be noted, also, both sides, wherever a doctor was in the jurisdiction, could have subpoenaed the doctor to come here."
Plaintiffs contend this was prejudicially erroneous because (1) the trial court did not follow the practice recommended in State v. Clawans, 38 N.J. 162 (1962); (2) the evidence did not warrant such a broadside charge on the nonappearance of all of the "certain doctors whose names appeared in the case," and (3) even if a charge on the nonappearance of witnesses was warranted, this charge was incomplete and improper in form.
Instructions to a jury may be said to fall into three broad categories: (1) those which the judge must give even without request from counsel, (2) those which he must give when requested by counsel, and (3) those which he need not *414 give even when requested by counsel. Defendant contends that the charge in question falls into class (2), citing Clawans, supra.
In Clawans the court stressed the "peculiar facts" before it. Therefore we doubt that Clawans always compels the giving of such a charge when a possible witness does not appear, even upon request and even if the rules laid down in Clawans and hereafter discussed are complied with. Be that as it may, Clawans did not hold that the charge was to be given merely because a person who apparently knew something about some facet of the case did not appear and testify. We think Clawans made it abundantly clear that (1) the charge is not to be given unless the judge is first satisfied that giving it is clearly justified as to a particular witness or a particular class of witnesses, and (2) the charge, if given, must identify the witness or class of witnesses in question and the issues upon which their testimony might have been helpful. See Clawans, at p. 173, and Justice Francis's dissenting opinion therein, at pp. 175-176.
Clawans restated the conditions precedent for such a charge. It must appear that it was within the power of the party to produce the witness. The inference "is based not on the bare fact that a particular person is not produced as a witness * * * but on his non-production when it would be natural for the party to produce the witness." O'Neill v. Bilotta, 18 N.J. Super. 82, 86 (App. Div.), affirmed o.b. 10 N.J. 308 (1952). It must appear reasonably probable that the witness "could testify to specifically identifiable facts." Meistrich v. Casino Arena Attractions, Inc., 54 N.J. Super. 25, 31 (App. Div.), modified 31 N.J. 44 (1959), and, even then, that his evidence would not be merely cumulative, but "superior to that already utilized in respect to the fact to be proved." Clawans, 38 N.J., at p. 171. The inference is not proper if the witness is available to both parties or "by his position would be likely to be so prejudiced against the party that the latter could not be expected to obtain the unbiased truth from him * * *." Ibid.
*415 A judge may not give a charge relating to the non-production of a witness unless he is satisfied that a sufficient foundation for drawing such an inference has been laid in accordance with the above-mentioned rules. Admittedly "application of the above principles is particularly perplexing and difficult * * *." Clawans, at p. 172. On the other hand, giving such a charge when it is not warranted, or broader than is warranted, may be prejudicial error. It is one thing for counsel in his summation to point to the absence of particular witnesses; it is quite another when the court puts the weight of its authority behind such a summation by telling the jury it may draw an adverse inference from their absence. As the United States Supreme Court said in Griffin v. State of California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965), "What the jury may infer, given no help from the court is one thing. What it may infer when the court solemnizes the silence * * * into evidence * * * is quite another."
For these reasons, our Supreme Court stressed in Clawans that, except where prior warning and an opportunity to explain are obviously unnecessary,
"* * * The better practice * * * is for the party seeking to obtain a charge encompassing such an inference to advise the trial judge and counsel out of the presence of the jury, at the close of his opponent's case, of his intent to so request and demonstrating the names or classes of available persons not called and the reasons for the conclusion that they have superior knowledge of the facts. This would accord the party accused of non-production the opportunity of either calling the designated witness or demonstrating to the court by argument or proof the reason for the failure to call. Depending upon the particular circumstances thus disclosed, the trial court may determine that the failure to call the witness raises no inference, or an unfavorable one, and hence whether any reference in the summation or a charge is warranted."
From the foregoing, it is obvious that the court must determine as to each allegedly missing witness what it is reasonable to assume he could have testified to "in respect to the fact to be proved," and whether that testimony "as to specifically *416 identifiable facts" would probably have been "superior to that already utilized in respect to the fact to be proved." If so, the court must then determine whether the witness was equally available to both sides and, if not, whether the circumstances are such that it would be natural for one side to call him. Among the circumstances to be considered may be the expense of calling the witness and the imposition upon his time and his business or profession as compared with the importance of his testimony and the value of the litigation. These questions are nearly always for the judge alone to decide because ordinarily he is far better able than the jury to decide them. Rarely does the solution of any one of them involve a factual dispute which should be left to the jury.
In the case at bar we hold that not all (and probably none) of the "certain doctors" mentioned in the charge fitted into said rules. In any event, we hold it was not proper to leave it to the jury to select the doctors from whose absence it could draw inferences adverse to the plaintiffs, and the issues upon which such inferences might be drawn.
The essential facts involved in this litigation were (1) defendant's alleged malpractice; (2) the condition of each plaintiff's tooth and jaw as a result thereof, and (3) damages. Plaintiffs produced only one medical witness  Dr. Hoffman, their principal treating dentist. Four other dentists were mentioned in the testimony: Doctors Doyne, Blum, Moscow and Paternoster. When plaintiffs became disenchanted with defendant, they first went to Dr. Doyne. It appears that his specialty is the extraction of teeth. He immediately referred them to Dr. Blum, whose specialty is root canal work. Dr. Blum, in turn, referred them to Dr. Hoffman, a dentist since 1941 and a teacher at New York University College of Dentistry from 1946 to 1953. Dr. Hoffman's qualifications were not questioned. The fact that plaintiffs were so referred to him is a clear indication of his status in the profession.
Dr. Hoffman assumed full responsibility for the treatment of plaintiffs. He found Mr. Wild's tooth in question beyond *417 saving, and he sent him back to Dr. Doyne to have it extracted. Thereafter, in preparation for the repair of the damage allegedly done by defendant, Dr. Hoffman trimmed the gums, drilled or ground down three teeth adjacent to the one which had been removed, sent Mr. Wild to Dr. Blum for root canal therapy, put a post into one of the other teeth and fitted gold crowns over the three teeth. Finally, he constructed a fixed bridge to anchor a false tooth in the place of the one extracted by Dr. Doyne. Dr. Hoffman's bill for services to Mr. Wild was $570, Dr. Blum's $150 and Dr. Doyne's $20.
The situation was substantially the same as to Mrs. Wild, except that Dr. Blum did nothing for the after the initial visit. Dr. Hoffman thought her tooth also was beyond saving, but to make sure he sent her to a periodontist  it is not clear from the record whether it was Dr. Moscow or Dr. Paternoster. The periodontist reported that the tooth indeed could not be saved, and Dr. Hoffman then sent her to Dr. Doyne to have it extracted. Thereafter Dr. Hoffman did whatever was necessary to rehabilitate Mrs. Wild's mouth and install a bridge. Mrs. Wild did not require root canal therapy. Dr. Hoffman's bill for Mrs. Wild was $400, Dr. Doyne's $30. Dr. Blum presented a bill for $10 for the initial examination of Mrs. Wild. No bill was proved and no separate claim was made for whatever services might have been rendered by Doctors Moscow or Paternoster. Dr. Moscow had rendered no services to Mr. Wild. However, Dr. Moscow was a patient of Dr. Hoffman and happened to be in Dr. Hoffman's office on one occasion when Mr. Wild was there. That time, at Dr. Hoffman's invitation, he looked at Mr. Wild's tooth before it was extracted.
We think it cannot be disputed that Dr. Hoffman's testimony covered the services rendered and the knowledge of the case learned by Doctors Doyne and Moscow (and Paternoster, if any) beyond any need to call them. Although it is more debatable, we think Dr. Hoffman's testimony covered Dr. Blum's services and information as well. The root canal work *418 done by Dr. Blum followed the extraction of Mr. Wild's tooth by Dr. Doyne, and was merely an incident of the over-all project undertaken by Dr. Hoffman to rehabilitate Mr. Wild's mouth. The testimony of each of these doctors would have been merely cumulative or corroborative, and certainly could not have been superior to that of Dr. Hoffman in respect to the essential facts to be proved. They could have added nothing but corroboration as to defendant's lack of skill and the damage done as a result of it to plaintiffs' teeth. Certainly their testimony on these points could not have been superior to Dr. Hoffman's. This is especially so when it is remembered that the teeth themselves were in evidence.
As we have seen, there was no bill from Doctors Moscow and Paternoster at all; Dr. Doyne's total bills for the two extractions were $50; Dr. Blum's total bills were $160. In the over-all picture of the damage allegedly done to the plaintiffs, these were small sums. The bills were in evidence and Dr. Hoffman testified they were reasonable. In any event, the inferences raised by defendant and approved by the charge was as to defendant's liability, not the amount of these bills.
In short, there was ample reason for plaintiffs' attorney to conclude that the testimony of the doctors other than Dr. Hoffman was unnecessary and not worth the fees they would necessarily charge for testifying. In addition, plaintiffs' attorney may well have felt that it would have been an imposition upon these doctors to disrupt their practices for the little that they could contribute by way of testimony. Had the judge given plaintiffs warning of his intention to give the charge and the opportunity to be heard as outlined in Clawans, plaintiffs very likely would have been able to satisfy him that they had good and sufficient reasons for not calling the doctors and that therefore the charge should not be given.
For the foregoing reasons, we hold that it was error to give the charge. Our examination of the record convinces us that the error was prejudicial. Plaintiffs made a strong showing of malpractice. The adverse judgment in the face of that testimony leads us to believe that the above charge *419 alone or in conjunction with the other matters hereafter mentioned may have had a large part in turning the tide in defendant's favor.
Plaintiffs also argue that the trial court "erroneously barred plaintiffs from establishing through their medical expert that defendant was negligent in failing to consult other dentists when the plaintiffs' condition created a situation of danger beyond his ability * * *." Since we are reversing and sending the case back for a new trial, there is no need to discuss this point in detail. Suffice it to say that, although plaintiffs' attorney did not make his position as clear as he should have done, it was fairly obvious that he was trying to prove the failure to call in consultants as an element of defendant's negligence. At the new trial such evidence should be admitted if properly presented by plaintiffs.
Finally, plaintiffs argue that the summation of defendant's counsel was so improper as to warrant reversal even though no objection was made. Were this the only ground of appeal, we would find it insufficient to justify a reversal on the ground of plain error. However, to make sure the improprieties are not repeated, we point them out here. Defendant's counsel should not have emphasized defendant's youth and that he was "on the threshold of his career." We see no justification for counsel's attack on Dr. Hoffman as "malicious and vicious against the young man." Cf. Paxton v. Misiuk, 54 N.J. Super. 15 (App. Div. 1959); Flynn v. Stearns, 52 N.J. Super. 115 (App. Div. 1958). And we think language such as the following should be avoided:
"Don't forget, I am going to ask you ladies and gentlemen, when you go into the jury room to ask yourselves this, they are asking you under a solemn and holy oath to dip your hands into somebody else's pocket and spend their money."
Cf. Purpura v. Public Service Elec. & Gas Co., 53 N.J. Super. 475, 481 (App. Div.), certification denied 29 N.J. 278 (1959); Haid v. Loderstedt, 45 N.J. Super. 547, 554 (App. Div. 1957).
The judgment is reversed for a new trial.