DENNIS R. BIRUK, AN INFANT, *ET AL.*, PLAINTIFFS-APPELLANTS, v. WILLIAM WILSON, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued June 6 and 7, 1967—Decided October 9, 1967.

254

*Mr. Nicholas Conover English* argued the cause on behalf of appellants *Dennis Biruk* and *George Biruk* (*Messrs. Mc-*

*Carter & English,* attorneys; *Mr. Joseph E. Irenas* on the brief).

*Mr. Sam Weiss* argued the cause on behalf of respondents *Janice Mayercik, et al.* (*Mr. Henry C. Ruttiger,* attorney).

*Mr. Thomas B. Mannion* argued the cause on behalf of respondents *Dorothy Meier, et al.* (*Messrs. Lynch, Murphy, Mannion & Lynch,* attorneys).

*Mr. Solomon Lubow* argued the cause on behalf of respondent *Steven Warchol* (*Messrs. Chazin & Chazin,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. This case arises out of a two car automobile accident which occurred in Highland Park, N. J. at about 9:30 P.M. on August 13, 1963. William Wilson, a minor, operating the car of his uncle, Henry Stone, was travelling east on Route 27, a four-lane road divided by a double white line, accompanied by Dorothy Meier and Janice Mayercik, also minors. At some point west of the intersection of Route 27 and Eighth Avenue he applied his brakes, causing the car to skid across the double center line into the left-hand westbound lane. According to Wilson he did so because of a car stopping in the road some distance ahead of him. The result was a collision with a car driven by another minor, Dennis Biruk, and owned by his father, travelling west in the left lane. Riding with Biruk as a passenger was Steven Warchol. The two girls, Warchol and Biruk suffered considerable injuries. Janice Mayercik, her father, Dorothy Meier, her father and mother, and Steven Warchol brought suit against Wilson, Stone, Dennis Biruk and his father. The Biruks brought an action against Wilson and Stone. The cases were consolidated and the jury determined that William Wilson and Dennis Biruk were negligent and awarded damages as follows: Janice Mayercik, $30,000; her father, $5,188; Dor-

othy Meier, $18,500; her parents, $1,279.55; and Steven Warchol, $15,000.

The Biruks appealed from the judgments in their suits against Wilson and Stone and on the actions undertaken by the Mayerciks, Meiers and Warchol against them, to the Appellate Division which affirmed in an unreported *per curiam* opinion. Wilson, who was uninsured and represented by the Unsatisfied Claim and Judgment Fund at trial did not appeal nor contest Biruks' appeal before the Appellate Division and has not contested the action before this Court. We granted Biruks' petition for certification. 48 *N. J.* 120 (1966).

In substance, Biruks' appeal urges that: (1) the jury's finding of liability was contrary to the weight of the evidence; (2) the verdicts in favor of Janice Mayercik and Dorothy Meier and their parents were excessive; (3) they were prejudiced by the trial tactics of opposing attorneys; and (4) there was error in the charge as given and in the omissions to give certain requested charges.

I

Dennis Biruk testified at the trial that the Wilson car skidded suddenly into his lane almost immediately in front of him. There was no warning to alert him to the danger. Steven Warchol, however, stated that he saw the car skidding in the westbound lane about 150 feet ahead and shouted a warning to Dennis Biruk which went unheeded. William Wilson testified that when he first started skidding he observed a car approaching in the westbound lane about 100 feet away. In the suits against the Biruks, the plaintiffs' theory of liability was that Dennis Biruk had ample warning of the presence of Wilson's car in his lane and that he should have taken some action to avoid the accident. In addition to the above cited testimony of Warchol, plaintiffs in the suits against the Biruks introduced evidence as to the physical surroundings at the scene of the accident. They argued

that had Dennis Biruk been acting with reasonable care there were numerous places where he could have steered his car to avoid the accident.

Upon examining the record we view the question of Dennis Biruk's negligence as a very close one. Nevertheless, we cannot sustain appellants' claim that the jury's finding of liability was contrary to the weight of the evidence.

## II

■ We find no merit in the claim that the verdicts in favor of the girls and their parents were excessive.

## III

■ We do find, however, that the tactics of the attorneys for Warchol and the Meiers should not have been permitted especially in the light of the factual complex surrounding the accident as testified to at the trial.

The testimony indicated that shortly prior to the accident Biruk and Warchol had stopped at a McDonald's Hamburger Drive-In on Route 27. While there Biruk met and briefly conversed with one Robert Jasper, a friend with whom he sometimes double dated. After a couple of minutes Jasper left, proceeding west on Route 27. Shortly thereafter, Biruk and Warchol also left and proceeded west. Biruk testified that the cars later stopped side by side at a traffic light about a mile up the road. Warchol did not remember seeing Jasper after he left McDonald's. When the light turned green Jasper accelerated faster and proceeded down the road.

In Biruk's deposition which was used by Warchol's attorney on cross-examination Biruk stated, "He went first and he kept going away from us, pulling away from us". Biruk was aware of the fact that Jasper remained up ahead because he could see the tail-lights of his car. At the time of the accident he estimated that Jasper was about 300 yards ahead of him.

Jasper's name was listed by Biruk in his answers to Interrogatories and he was available for questioning by all parties. Despite this the attorney for the Meiers stated the following in his summation:

" 'Now the mention of Mr. Warchol brings up the other name, the witness or not a witness, the man who wasn't here. Was it Robert Jasper? In any event, Mr. Jasper wasn't here. Now Mr. Lane [Biruks' attorney] rightly objected to Mr. Warchol saying what he did. But we'll never find out and Mr. Lane made the comment and he can make the comment that we have had an opportunity, Mr. Rose, Mr. Lubow, Mr. Ruttiger and myself, we had the opportunity to bring him in as well as Mr. Lane. But you must remember this, ladies and gentlemen, that from the testimony of Mr. Biruk, out of his own mouth, Mr. Jasper is his friend. We had a right to go to talk to him. But do you think a friend would talk to us if we put him on the stand? You know how the rules are. We are limited to questions, we are bound by them and he would be our witness. Did we know what he was going to say? You have a right to consider that. He was his friend and he didn't come in to testify for him. Now would his friend have come in and testify against him as to whether they were racing or some evidence in here whether they were trying to keep up with one another.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

With that I'll leave it drop and let Mr. Lane comment on it if he will. But unfortunately, ladies and gentlemen, in that regard at least you did not hear the whole truth, the whole picture. Mr. Jasper wasn't here.' "

The suggestion that Jasper might have evidence of some importance was first made by Warchol's attorney during the course of the trial. In an argument on an objection, in the presence of the jury, he stated:

" 'I believe that especially where he has been named and his absence here, if there will be an absence, will be a matter of consideration for a court and jury. I think that nothing more but just what I have said just now, I think that raises a question in the minds of all of us, does this man Jasper know something about it, and especially, when I read this one answer there, which might indicate very well if not expressly.' "

Jasper was available for questioning by all parties. There is nothing in the record to indicate that he had any knowledge

of any facts detrimental to Biruk's case. In fact, a statement which he gave to counsel for Biruk indicates that, if anything, his testimony might have aided Biruk's defense since he stated that Wilson's car was travelling at a speed which could have been shown to exceed the speed limit. In the light of Jasper's availability and the fact that there was no reasonable basis to believe that he had any information detrimental to Biruk's case we find that counsel's suggestions otherwise were unwarranted.

Even more unwarranted, however, was the suggestion by Warchol's attorney that the Biruk car was following or playing games with Jasper's car. This suggestion was made during the trial and was the first point raised by counsel in his summation. He stated:

"* * * At McDonald's they had something to eat and the attorney for Mr. Biruk asked Mr. Warchol how long were you separated from him when you went to get the milkshake or whatever it was, and my client said three minutes, and he let it go at that. It took three minutes to get the food and he didn't go into the question of his talking to Mr. Jasper. He avoided that as the plague, and I don't blame him because he is trying to put his best foot forward for his client such as he is able to do in this case and he is trying very hard. But aside from anything, if he is going to say that he couldn't have talked to Mr. Jasper that they were only there a few minutes, two or three minutes, to get the food and to eat it and so on. Mr. Biruk admits that he had a conversation with Jasper at McDonald's, whether it was two minutes or three minutes or how long they were there, he did have a conversation but he says I don't recall what that conversation was. But he did meet him at the Stelton light two miles up the road and you heard the way he traveled. You heard the testimony that he went out first in the slow lane and then he got into the right lane, and the question now becomes one of, did he, was he following Mr. Jasper. You know following is a very dangerous business as anybody who drives a car knows. It is one of the easiest ways to get into an accident and why should he have an eye to see the lights and say this is the rear light of Mr. Jasper. * * *

Now with this background of a man driving with his eye on another car two or three hundred feet ahead of him before the accident occurred, it is in this context, I believe, and I leave it, of course, to you for you are the sole judges of the facts. I am merely putting forth the way I see it and you are going to get everybody's view. It is in this context that we must consider this whole matter. * * *"

Counsel for the Meiers made a similar suggestion in the previously quoted portion of his summation where he suggested Biruk and Jasper were racing.

There was absolutely no basis in the record for these suggestions. Such conclusions were possible only by taking the evidence out of context. The suggestion was especially unwarranted coming from the attorney for Steven Warchol. On the stand Warchol offered no testimony that Biruk was tailing or racing with Jasper. In fact, he stated that he did not even remember seeing Jasper after he left McDonald's. Under these circumstances we disapprove of counsel's tactics here.

## IV

Appellants also allege error in the charge as given and in the omissions to give certain requested charges. The Biruks employed two doctors to examine Janice Mayercik, Dorothy Meier and Steven Warchol. The doctors' reports were also submitted to counsel for Wilson. Neither doctor was called as a witness. The court noted this and charged the jury that the unexplained absence of a witness whom a party would naturally be expected to call permitted the inference that his testimony would have been unfavorable to that party. Biruk requested the court to instruct the jury that this part of its charge did not apply to Jasper. The court refused to give the requested instruction. There can be no question that the instruction on unexplained absence of a witness would have been erroneous if specifically applied to Jasper. See *State v. Clawans,* 38 *N. J.* 162 (1962); *Wild v. Roman,* 91 *N. J. Super.* 410 (*App. Div.* 1966).

No such express reference was however made. The only question therefore, is whether the failure of the court to comply with the request had the potential of confusing the jury into the understanding that the charge as given applied to Jasper. Under the circumstances here present and in the light of the summation we think such a possibility existed and that the court should have limited its charge as requested.

Appellants also allege error in the following instruction:

" 'I further charge you that a driver is required to keep a proper lookout for others on the highway and to have the car under such reasonable control as the circumstances justly require. *He must have his vehicle under such control that it can be stopped before doing injury to any person or thing, in any situation reasonably likely to arise in the circumstances.*' " (Emphasis added)

 Although this instruction is not technically incorrect, when set in the context of this case it could be misleading. The duty of a driver to exercise due care does not require him to anticipate that persons not in his path of travel will suddenly place themselves there. *Mijon v. Acquaire,* 51 *N. J. Super.* 426, 443 (*App. Div.* 1958) *certiorari* denied, 28 *N. J.* 146 (1958) ; 2 Stevenson, *Law of Negligence in the Atlantic States* § 673 (1954). The defect in the instruction rests in the fact that where as here, there was testimony of a car suddenly skidding on a four-lane highway from an easterly lane into the path of a driver proceeding in the opposite direction, the instruction invited the jury to conclude that such was a "situation reasonably likely to arise in the circumstances" for which the latter driver should be prepared. If that conclusion were drawn Biruk would have been held to a standard of almost absolute liability, *i. e.,* that his car should be so situated on the highway and the speed such, and his lookout so continuous that he could avoid any car that might cross the center line at any time. On the contrary, the duty of the driver is to exercise reasonable care with respect to such an event when it arises.

 When taken individually each of the matters discussed under headings III and IV hereof would not seem of great significance and none separately would warrant a reversal. However, we have recognized that the cumulative effect of small errors may be so great as to work prejudice. In such cases reversal is warranted. *Schueler v. Strelinger,* 43 *N. J.* 330 (1964) ; *State v. West,* 29 *N. J.* 327 (1959) ; *State v. Orecchio,* 16 *N. J.* 125 (1954) ; *State v. Mack,* 86

N. J. Super. 594 (App. Div. 1965); Wimberly v. City of Paterson, 75 N. J. Super. 584 (App. Div 1962) certiorari denied, 38 N. J. 340 (1962). In considering the question of prejudice consideration must also be given to the fact that the issue of liability of Dennis Biruk in this case was a very close one. It is our conclusion that the cumulative effect of the factors discussed herein where the case against Dennis Biruk was extremely thin was such as to prejudice the appellants. It is therefore ordered that the judgments against the Biruks, both as plaintiffs and defendants, be reversed and the case be remanded for a new trial.

For reversal—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

For affirmance — None.