CRABTREE, J.T.C.
This is a local property tax case wherein plaintiff seeks review of Hudson County Board judgments with respect to the 1986 and 1987 assessments on property located on the Newark-Jersey City Turnpike, Kearny, New Jersey (Block 284, Lot 33). The property is owned by Windmere Associates and leased to plaintiff on a long-term basis. The assessments were:
1986 1987
Land $ 3,000,000 $ 3,000,000
Improvements 44,716,000 40,716,000
Total $47,716,000 $43,716,000
The county board reduced the 1986 assessment by $1,000,000, all allocable to improvements, and affirmed the 1987 assessment. The judgment code appearing on the 1986 county board judgment indicated a settlement.
At the outset of the trial defendant moved to dismiss plaintiff’s complaints for both years on the ground that the cases *219 were settled at the county board. Defendant relies upon N.J.S. A. 54:51A-l(c), which provides in relevant part:
“c. If the tax court shall determine that the appeal to the county board of taxation has been ... (3) settled by mutual consent of the taxpayer and assessor of the taxing district, there shall be no review____”
The court thereupon took testimony on the sole question of whether the 1986 and 1987 cases were settled before the county board.
The testimony is in conflict, but the court, having had the opportunity to hear the witnesses, observe their demeanor and to ask questions of them, concludes that the testimony of defendant’s witnesses is the more credible, and accordingly, the 1986 and 1987 cases were settled before the Hudson County Board. Thus, the quoted statute precludes further review in this court.
In the latter part of August or early in September 1986 defendant’s appraiser, William J. Stack II, met at the subject property with one John Rackham, a principal realty tax specialist employed by plaintiff. Rackham testified that he has participated in numerous tax assessment appeals in New Jersey, and that he is familiar with practice and procedures before New Jersey county boards of taxation. At the meeting Stack and Rackham discussed settlement of the 1986 tax appeal then pending before the county board. In response to Stack’s pragmatic question, “What do you need?”, Rackham opined that the large facility in question suffered 10% functional obsolescence, which translated to a $4,000,000 reduction in the assessment. Stack indicated that $4,000,000 was too much for one year so he suggested a $1,000,000 reduction for 1986 and a further reduction of $3,000,000 for 1987. Rackham responded: “That sounds okay.” Stack relayed the proposal to Gary Bennett, then the municipal attorney, who promised to submit it to defendant’s governing body for approval.
*220 The parties appeared before the county board on October 7, 1986 through their respective counsel, John T. Sheehan, for plaintiff and Bennett for defendant. Stack and Rackham were also present, as was Stanley Kosakowski, the Hudson County Tax Administrator. Bennett, without objection from counsel or any other representative of plaintiff, placed the settlement on the record and indicated that it was subject to the approval of defendant’s governing body. (That approval was given before the end of October 1986.)
At the hearing, however, the county board commissioner advised the parties that, in view of the magnitude of the 1986 reduction, appraisals had to be submitted to the county board before judgment could be entered. Rackham appeared surprised at the commissioner’s request and expressed concern that an appraisal could be prepared within the time specified, namely, October 21, 1986.
It seems critical to note, at this juncture, that plaintiff's representatives, including Rackham, came to the hearing on October 7, 1986, a little more than one month before the expiration of the county board’s jurisdiction over tax appeals, without an appraisal of the subject property.
Plaintiff’s appraisal, prepared by Rackham, was submitted to the county board in compliance with the commissioner’s directive, on or about October 31, 1986. The estimate of the subject property’s fair market value set forth therein was $24,214,000 as at October 1, 1985. Thereafter, namely, on November 14, 1986, the county board entered judgment reducing the 1986 assessment from $47,716,000 to $46,716,000 in accordance with the settlement. The entire reduction was allocated to improvements.
No further proceedings on the 1986 appeal were conducted before the county board. No representations were made by plaintiff either to the county board or to defendant’s representatives after the submission of plaintiff’s appraisal of October 31, 1986.
*221 On December 19, 1986 plaintiff filed a complaint with this court seeking further review of the 1986 assessment as reduced by the county board. Defendant’s counsel did not regard this filing as inconsistent with the settlement; it appeared to him to be in the nature of a protective appeal pending implementation of the settlement for 1987.[1]
Pursuant to what defendant’s representatives regarded as a settlement, the 1987 assessment was reduced to $48,716,000. Notwithstanding this reduction plaintiff appealed to the county board for 1987. The assessment was litigated before that tribunal, which affirmed the assessment. Plaintiff’s complaint for 1987 was filed with this court on December 24, 1987.
Plaintiff makes several contentions, none of which has merit.
Its first argument is that Rackham lacked authority to settle. In support plaintiff submits ex parte affidavits of two postal service functionaries, neither of whom appeared as a witness at the hearing before this court. These affidavits appeared for the first time as companion documents to plaintiff’s post-trial brief. Obviously, there was no opportunity for defendant to cross-examine the affiants. Fundamental fairness demands rejection of the affidavits, and counsel should be aware that this court views the post-trial submission of ex parte affidavits, as factual support for a disputed position, as unprofessional practice.
Furthermore, the only competent evidence in the proceeding before this court as to Rackham’s authority is the testimony of Rackham himself. He stated that his settlement authority “extends to the extent of making judgments about values of real estate.” This is sufficient authority where the very issue before an adjudicative tribunal is the value of real estate.
*222 The next point plaintiff makes is equally unpersuasive. It urges that the county board’s own regulations regarding submission of written settlement stipulations were not followed, and hence, there was no valid settlement. The fact remains that the county board was satisfied, following the submission of an appraisal, that the proposed assessment reduction of $1,000,000 for 1986 was not inappropriate and proceeded to enter judgment reflecting the parties’ agreement to that reduction. There was a meeting of the minds between the parties to the appeal. The county board’s failure to insist upon written stipulations does not affect the parties’ understanding. Plaintiff’s argument is unsound.
Plaintiff goes on to construct an elaborate argument supporting its denial of a settlement. Stack and Bennett both testified that Stack’s settlement proposal was accepted; Kosakowski, who was present at the county board hearing on October 7, 1986, also testified that the case was settled. In the face of this credible testimony plaintiff maintains that no valid settlement was ever agreed upon. Plaintiff’s argument is belied by the testimony of its own witness. At the hearing before this court on June 9, 1988 the following exchange took place between the court and Mr. Rackham:
THE COURT: Now, was it your understanding when you were scheduled, by the time you were scheduled to appear before the County Board in the ’86 appeal, that as far as you were concerned the case had been settled at that time?
THE WITNESS: I thought that the hearing was going to be pro forma.
THE COURT: In other words, that’s, the answer is yes, you thought it was settled.
THE WITNESS: I thought — that’s right ...
Moreover, one of the principals in the scene played out before the county board on October 7, 1986 was plaintiff’s counsel, John T. Sheehan. Sheehan was not called by plaintiff to testify in the proceeding before this court. Plaintiff’s failure to call this witness gives rise to the inference — which this court draws — that his testimony would have been unfavorable to plaintiff. Inwood at Great Notch v. Little Falls Tp., 6 N.J.Tax *223 316 (Tax Ct.1984); Wild v. Roman, 91 N.J.Super. 410, 220 A.2d 711 (App.Div.1966).
Rackham’s testimony that the settlement was negated when the county board commissioner called for an appraisal is simply unworthy of belief. If he were as familiar with county board procedures as he professed to be, he could not have misconstrued the commissioner’s request for an appraisal; nor could he have reasonably assumed that, if the case were to proceed to trial, an appraisal would not be needed. Yet he appeared at the hearing scheduled for October 7, 1986 without an appraisal.
Plaintiff’s final arguments deal with the binding effect of the settlement for 1987. It contends that defendant was without authority to settle the assessment for a subsequent year, citing Jackson Tp. v. Marsyll of B.B. Inc., 3 N.J.Tax 386 (Tax Ct.1981), in which this court declared that an assessor is without authority to agree to an assessment reduction prior to the assessing date. That is not the case here. The 1986 and 1987 assessments were reduced in accordance with a settlement package relative to plaintiff’s 1986 appeal pending before the county board. The settlement proposal was presented to the county board on October 7, 1986, six days after the assessing date for 1987 and the settlement was approved by defendant’s governing body approximately two weeks hence.
Plaintiff also argues that defendant acknowledged that there was no binding settlement for 1987 by participating in hearings before the county board pertaining to the 1987 assessment. This is indeed a curious argument. Plaintiff’s appeal to the county board was from an assessment reduced by $3,000,-000 from the prior year pursuant to defendant’s good faith implementation of the settlement entered into in October 1986. In view of plaintiff’s bad faith reneging on the settlement, defendant had no choice but to defend the 1987 appeal.
In view of the foregoing, defendant’s motion to dismiss the 1986 and 1987 complaints will be granted. The Tax Court clerk is directed to enter judgment accordingly.

Although plaintiffs complaint was filed after the assessing date for 1987, the assessment for that year was still subject to review and correction by the county board. N.J.S.A. 54:4-35, -55.