62 A.3d 335

STEPHANIE WASHINGTON, PLAINTIFF–RESPONDENT, v. CARLOS A. PEREZ, OLYMPIA TRAILS AND OLYMPIA TRAILS BUS COMPANY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 12, 2013—Decided March 28, 2013.

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Michael K. Tuzzio* argued the cause for appellants (*Ronan, Tuzzio & Giannone,* attorneys; *Mr. Tuzzio,* of counsel; *Mr. Tuzzio, Marie A. Accardi* and *Thomas F. Rinaldi,* on the brief).

*Brian L. Katz* argued the cause for respondent (*Dansky Katz Ringold York,* attorneys; *Mr. Katz,* of counsel).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether the trial judge committed reversible error by instructing the jury that it could draw an adverse inference against defendants because they did not call their medical experts to testify. We agree with defendants that the judge mistakenly gave this instruction and reverse and remand for a new trial.

Plaintiff Stephanie Washington commenced this action alleging personal injuries as a result of an auto accident in New York City on December 20, 2006. She claims her injuries were caused by defendant Carlos A. Perez's negligent operation of a bus owned by defendant Olympia Trails Bus Company, Inc.

During a five-day jury trial, the jury heard, among other things, testimony regarding the nature of plaintiff's claim of injuries. In his opening statement to the jury, defense counsel [1] argued plaintiff was not injured in the accident but, later, offered no evidence of the lack of injuries. Instead, the defense only called the bus driver to testify. Even though defendants obtained and served on plaintiff the medical reports of Dr. Gerald Hayken and Dr. Scott Sharrits, defendants did not call them to testify. Consequently, plaintiff requested an adverse inference charge, and, over defendants' objection, the judge advised the jurors that if they found defendants' medical experts were witnesses defendants would naturally be expected to call to testify, the jurors could infer the testimony of defendants' experts would have been adverse to defendants' interests.

The jury found defendants negligent and awarded plaintiff $500,000 in pain and suffering and $242,000 in economic losses. The trial judge denied defendants' motion for a new trial or for a remittitur.

Defendants appeal, arguing:

I. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL AND/OR REMITTITUR.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CHARGED THE JURY ON ADVERSE INFERENCE AND PERMITTED COUNSEL TO ARGUE IN SUMMATION THAT SUCH AN INFERENCE CAN BE MADE BY THE NON-APPEARANCE OF DEFENSE EXPERTS.

A. The trial court committed reversible error in giving the adverse inference charge because Drs. Hayken and Sharrits were not "peculiarly within the control or power" of defendants.

---

[1] Defendants were represented by a different law firm during the proceedings in the trial court.

B. The trial court committed reversible error because an adverse inference charge is inappropriate when the subject witness is available to a plaintiff.

C. The commentary by counsel during summation compounded the trial court error and prejudiced the defense.

III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE DR. ROSEN'S MISLEADING TESTIMONY, ENTITLING DEFENDANTS TO [A] NEW AND FAIR TRIAL.

IV. THE CUMULATIVE ERRORS VIEWED IN THE AGGREGATE NECESSITATES A NEW TRIAL.

Because the trial judge erred in instructing the jury that it could draw an adverse inference as a result of defendants' failure to call their expert witnesses, and because this error necessitates a new trial, we need not reach the other issues raised in this appeal.

To put defendants' argument regarding the adverse inference charge in its proper perspective, it is necessary to review briefly some of the proceedings and evidence offered during trial.

We initially observe that plaintiff had also been in an auto accident in 2003, sustaining cervical, thoracic and lumbar injuries, causing her to miss approximately ten weeks of work. After the 2006 accident in question here, plaintiff told police she did not require an ambulance and declined medical treatment because she was not in pain. In fact, plaintiff did not seek medical treatment until approximately two weeks after the accident, when she saw her family physician, who referred her to Dr. Craig Rosen. Plaintiff continued to work following the 2006 accident until her retirement in 2009.

Plaintiff first saw Dr. Rosen in February 2007, two months after the accident, and then a few more times in the following three months, but did not see him again until July 2010, when Dr. Rosen authored his report for this litigation. Dr. Rosen recognized that plaintiff had been previously injured; he opined that plaintiff had aggravated a pre-existing chronic cervical sprain. At his deposition, Dr. Rosen observed "a small herniation" at C4–C5 in the MRI studies performed on plaintiff, but acknowledged that nerve conduction studies revealed plaintiff did not suffer radiculopathy at any level of the spine where a herniation may have appeared.

Following plaintiff's testimony, Dr. Rosen's videotaped deposition testimony was offered at trial in lieu of his appearance. Defense counsel sought redaction of the following question posed by plaintiff's counsel during that deposition that referred to a finding contained in one of the defense doctor's report:

Q. And in both of those reports did Dr. Ha[y]ken indicate what traumatic event or what event he associated the herniated disc that we've spoken of and the radiculopathy that we've spoken of?

A. Dr. Ha[y]ken states in his report that he feels that the cervical herniated disc and radiculopathy are related to the accident of 12/20/06.

In response to the request for redaction, plaintiff's counsel acknowledged that Dr. Hayken did "not use the words that the disc herniation that he saw on the MRI that was causing the symptomatology that he attributes to the accident and was from the accident." The judge, however, rejected the argument for redaction, explaining that although Dr. Hayken "didn't say it," he was "going to let the dep go where the dep goes," and defendants could call Dr. Hayken to testify if they were troubled by that ruling. Defense counsel vainly responded that he had no "plan on calling Dr. Hayken" and it was inappropriate to put him in the position of calling the doctor simply to say that his report did not say what was attributed to him in the disputed question.

The jury heard and saw Dr. Rosen's unredacted videotaped deposition. After hearing the testimony of plaintiff's economic expert, and the admission of other evidence not relevant here, plaintiff rested.

A charge conference immediately commenced, during which some mention was made of a missing-witness charge. The proceedings were adjourned for the day without completion of the charge conference. The next morning, the defense called its only witness, the bus driver, and rested. Despite having argued to the jury in his opening statement that "the evidence will show that [plaintiff] was not injured in the accident of December 20, 2006," defense counsel did not call either of his named experts.

The charge conference then recommenced; plaintiff's counsel again urged a missing-witness instruction. The judge agreed to

give the charge in a form that would leave the drawing of an inference to the jury's discretion.

As a result of that ruling, plaintiff's counsel argued to the jury that "we [did not] hear from Dr. Hayken" as to whether Dr. Rosen's view of what Dr. Hayken had said about the herniation was correct:

> We don't hear any clarification from Dr. Hayken, and wouldn't you think that defense counsel would bring in his own doctor that he retained to dispute anything that Dr. Rosen has said, them both being orthopedic surgeons, if he could? And what does it tell you about the candor in which the defense has approached this case when they don't—when they say she's not hurt in the—in the accident and they don't bring in their own doctor to support that theory?
>
> . . . .
>
> I—and why is it that the defense has, instead of bringing forth to you evidence, has hid evidence from you, has avoided you hearing what Dr. Hayken has to say? Perhaps because it doesn't support what they'd like you to believe.

Plaintiff's counsel then referred to defendants' other named expert, Dr. Sharetts, and the fact that he also was not called to testify:

> And, again, kind of unbelievably, if defense counsel is being candid with you and say ... there's some evidence in this case ... that my client was uninjured in this accident, he's got not one but two doctors to come into this court and offer you that evidence.

Following those comments, plaintiff's counsel summarized how he thought the jury should consider defense counsel's failure to call the medical experts:

> Now, [the trial judge] is going to instruct you later today ... on the law. And one of the things he's going to tell you is that you have to analyze whether or not you would expect the defendant[s] to produce their own hired experts in order to testify about what they saw and what their opinions were. And ... if you feel that that expert is somebody that ... you would have expected them to call, that you can take what's called a negative inference. That you can infer that had they called the expert, they wouldn't have supported the defendant[s'] case. That had they supported—they called that expert, in fact, what that expert would have had to say would be contrary to the best interests of the defendant[s].

In his charge, the judge instructed the jurors that if they found defendants' experts "are people ... or a person whom [they] would naturally expect the defendant[s] to produce to testify, you have a right to infer from the non-production of the witness, that

his testimony would be adverse to the interests of ... the defendant[s]." The judge also explained that "an adverse inference should not be drawn" if either defense doctor "is not a witness whom the defendant[s] would naturally be expected to produce, nor if there ... has been a satisfactory explanation for his non-production nor if he is equally available to both parties, nor if his testimony would be comparatively unimportant, cumulative in nature or inferior to that which you already have before you."

In *State v. Clawans*, 38 *N.J.* 162, 171, 183 *A.*2d 77 (1962), the Court held that the missing-witness inference may be drawn in appropriate cases. *See also Nisivoccia v. Ademhill Assocs.*, 286 *N.J.Super.* 419, 425–26, 669 *A.*2d 822 (App.Div.1996); *Wild v. Roman*, 91 *N.J.Super.* 410, 220 *A.*2d 711 (App.Div.1966). The *Clawans* Court explained the underlying rationale for the inference:

> [the] failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him.
> [38 *N.J.* at 170, 183 *A.*2d 77]

When the request for the inference is based on a party's failure to call a particular witness, "it must appear that the [missing witness] was within the power of the party to produce" and that the missing testimony "would have been superior to that already utilized in respect to the fact to be proved." *Id.* at 171, 183 *A.*2d 77.

Our Supreme Court has since cautioned that "[c]are must be exercised because the inference is not invariably available whenever a party does not call a witness who has knowledge of relevant facts." *State v. Hill*, 199 *N.J.* 545, 561, 974 *A.*2d 403 (2009). As a result, trial judges must take into consideration four factors in determining whether the charge is appropriate in a given case: (1) whether the "uncalled witness" was "peculiarly within" one party's control; (2) whether the witness was available "both practically and physically"; (3) whether the uncalled witness's testimony "will elucidate relevant and critical facts in issue"; and (4) whether "such testimony appears to be superior to that

already utilized in respect to the fact to be proven." *Ibid.* (quoting *State v. Hickman,* 204 *N.J.Super.* 409, 414, 499 *A.*2d 231 (App.Div.1985), *certif. denied,* 103 *N.J.* 495, 511 *A.*2d 667 (1986)).

Although not raised by the parties, we recognize that panels of this court have disagreed about the application of the inference when the missing witness is an expert. With little discussion as for the reason for so concluding, in *McQuaid v. Burlington County Memorial Hospital,* 212 *N.J.Super.* 472, 476, 515 *A.*2d 796 (App.Div.1986), we held that "the failure of a party to call an expert witness does not normally justify an adverse inference charge." *See also Bradford v. Kupper Assocs.,* 283 *N.J.Super.* 556, 580, 662 *A.*2d 1004 (App.Div.1995), *certif. denied,* 144 *N.J.* 586, 677 *A.*2d 759 (1996); *Anderson v. Somberg,* 158 *N.J.Super.* 384, 395, 386 *A.*2d 413 (App.Div.), *certif. denied,* 77 *N.J.* 509, 391 *A.*2d 522 (1978). Yet, in *Genovese v. New Jersey Transit Rail Operations,* 234 *N.J.Super.* 375, 382, 560 *A.*2d 1272 (App.Div.), *certif. denied,* 118 *N.J.* 195, 570 *A.*2d 960 (1989), again with little discussion, another panel held that "if an expert witness is not produced at trial ..., an advers[e] party would ordinarily be entitled to the benefit of an adverse inference." *See also Kochen v. Consolidated Police & Firemen's Pension Fund Comm'n,* 71 *N.J.Super.* 463, 473, 177 *A.*2d 304 (App.Div.1962). The Supreme Court appeared to have indirectly accepted the general applicability of the missing-witness inference when a party fails to call an expert in *Biruk v. Wilson,* 50 *N.J.* 253, 261, 234 *A.*2d 225 (1967).[2] And, the Court's holding in *Bender v. Adelson,* 187 *N.J.* 411, 435, 901 *A.*2d 907 (2006), presupposes the inference's availability when a party fails to call an expert.[3] In any event, we decline to

---

[2] In *Biruk,* the trial judge gave a missing-witness instruction that referenced not only defendant's failure to call his medical experts, but also a fact witness. 50 *N.J.* at 261, 234 *A.*2d 225. The Court held that the instruction should not have applied to the fact witness; no one argued and the Court did not hold that the instruction as to the experts was erroneous. *Ibid.*

[3] In *Bender,* the Court upheld the trial court's grant of a mistrial based, in part, on plaintiff's argument during summation that the jury should draw an adverse

consider this particular question further in light of the parties' failure to brief it, and will assume, as the parties appear to assume, that the inference may apply when a party declines to call an expert to testify.

As noted earlier, the *Hill* Court referred to four factors a trial judge should consider in determining whether to give a missing-witness instruction. In this case, only two factors support the instruction given. Defendants' experts were "practically and physically" available, as defense counsel had referred to them as potential witnesses during jury selection, and was still expressing late in the trial the likelihood that at least one of them would be called. *Hill, supra,* 199 *N.J.* at 561, 974 *A.*2d 403. And the testimony of the defense experts, or either one, would likely "elucidate relevant and critical facts in issue," since both experts examined plaintiff and expressed opinions as to her physical condition. *Ibid.*[4]

But the other two factors militate against the use of the charge here. The experts were not "peculiarly within the control or power of only the one party," *ibid.,* because plaintiff's counsel was entitled to call the defense experts, who had been identified in answers to interrogatories, as witnesses, *Fitzgerald v. Stanley Roberts, Inc.,* 186 *N.J.* 286, 301, 895 *A.*2d 405 (2006), if he thought their testimony would have been helpful to the jury. The fourth factor—whether the missing testimony "appears to be superior to that already utilized in respect to the fact to be proven," *Hill,*

---

inference because defendants did not call certain experts. 187 *N.J.* at 435, 901 *A.*2d 907. The Court did not base that determination on the notion that the missing-witness inference does not apply when an expert is not called to testify, but because a pretrial order had barred defendants' use of these experts and, thus, they "were not within defendants' power to produce." *Ibid.*

[4] Dr. Sharetts stated in his June 14, 2010 report that "as a result of [the 2006 accident, plaintiff] sustained a cervical and lumbar musculoskeletal injury as well as exacerbation of her thoracic musculoskeletal injury." In his October 20, 2010 report, Dr. Hayken concluded that plaintiff's "neck pain and radiculopathy are caused by the motor vehicle accident on December 20, 2006."

*supra,* 199 *N.J.* at 561, 974 *A.*2d 403—also suggests a rejection of the request for a missing-witness charge. That is, plaintiff's counsel did not seek the instruction so he could argue the testimony of defendants' experts was "superior" to the testimony the jury heard on the same subject; the essence of his argument was that the missing testimony would not have conflicted with what plaintiff's expert had to say. That missing testimony, therefore, could not be viewed as superior, but merely corroborative or cumulative to plaintiff's proofs.

Because this analysis of the four factors suggests that the determination to give the instruction was, at best, a close call, the proper exercise of discretion should have been to deny plaintiff's request. Certainly, no harm to plaintiff would have resulted from that result. Plaintiff's counsel still was free to argue to the jury that his expert testimony was unrebutted—that the only medical expert to testify had found that plaintiff had sustained the injuries that he described.

On the other hand, the harm to defendants was palpable. By giving the instruction, the judge had put the weight of the court's authority behind plaintiff's argument about the missing witness. *Wild, supra,* 91 *N.J.Super.* at 415, 220 *A.*2d 711. Moreover, plaintiff was not content to make use of the charge as a device by which the jury might gain insight into the disputed issues. Instead, plaintiff's counsel exceeded the bounds of propriety by arguing that defendants' failure to call the missing witnesses suggested that the defense had not been honestly presented. *See State v. Frost,* 158 *N.J.* 76, 86, 727 *A.*2d 1 (1999). In the portions of plaintiff's counsel's summation quoted earlier, he used this instruction as a platform for casting aspersions and for questioning defense counsel's "candor." We note that defense counsel did not object to that part of plaintiff's summation. Nevertheless, we view what occurred here as evidence of the danger of an unfettered use of the missing-witness charge and of our conclusion that defendants were prejudiced by the instruction.

Reversed and remanded for a new trial.