214 N.J. Super. 467 (1987)
519 A.2d 942
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
OLEG DRIKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 1986.
Decided January 7, 1987.
*468 Before Judges PETRELLA and SCALERA.
Alfred A. Slocum, Public Defender, attorney for appellant (Alan I. Smith, Designated Counsel, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Linda K. Calloway, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant Oleg Driker was convicted by a jury of second degree burglary and first degree robbery. He was sentenced to 15 years in prison for the robbery conviction, four years without parole eligibility, and to a concurrent seven year term for the burglary. Violent Crimes Compensation Board penalties aggregating $275 were assessed.
On this appeal defendant raises the following arguments:

*469 1) The court erred in admitting the video taped deposition of the victim.
(a) The failure to establish any conditions prior to playing the tape prejudiced defendant.
(b) The procedure used by the court below in admitting the video taped deposition of the victim at trial did not adequately safeguard defendant's Sixth Amendment right to confrontation.
2) Any inference that defendant had an obligation to produce a witness at trial under the facts of this case violated defendant's right to remain silent and diluted the State's burden of proof. (Not raised below.)
3) The sentence imposed is manifestly excessive.
The facts disclose that on June 7, 1984 a man, wearing a black ski mask, a plaid shirt and a multicolored hat, entered the apartment of the elderly victim and demanded gold from him in what appeared to be a Russian accent. The perpetrator held a knife, or a long letter opener to the victim's throat, taped his mouth shut with what turned out to be duct tape, struck the victim several times and threatened to put a pillow over his head. He also tied the victim's hands and legs with a telephone cord.
When the police arrived they discovered that the apartment had been ransacked. Various items of jewelry and personal effects valued in excess of $1,600 were stolen. Palm prints were obtained from the jewelry cabinet and one useable fingerprint was found on the duct tape used to gag the victim. As a result of discussions with family members, defendant's name was given as a suspect, and the police obtained his fingerprints. Driker's fingerprints matched those found in the apartment on the jewelry cabinet and the duct tape.
Prior to trial a videotaped deposition of the victim was taken at the hospital where he was convalescing because of illness. At the time of this deposition the victim was in bed and had various tubes attached to his body. A hearing was held with respect to the admissibility of the videotaped deposition. Judge Menza determined in a published opinion, State v. Driker, 204 N.J. Super. 558, 561 (Law Div. 1984), that the victim's deposition was admissible at trial because it was authorized by court rules; it satisfied defendant's constitutional right of confrontation; it provided the jury with the opportunity to observe the witness; *470 and it possessed sufficient indicia of reliability to justify its use at trial. Defendant had waived his right to be present at the deposition. In addition to the videotaped deposition, there was testimony at trial that the palm and fingerprints found in the apartment belonged to the defendant.
Defendant testified on his own behalf and asserted an alibi defense in which he claimed that he had been at his girl friend's home in New York at 10 a.m. on June 7, 1984, where he baby-sat her 10 year old son until noon, and then accompanied the two of them to the beach where they spent several hours. He gave an explanation for his fingerprints being found in the apartment to the effect that two days before the robbery, as a result of a telephone call from a former girl friend, he went to the home of the son and daughter-in-law of the victim, and then drove to the victim's apartment, which he had visited on prior occasions, to pick up his dog. He said that while en route he was given some gray tape to repair the old seat upholstery in the victim's daughter-in-law's 1964 Volvo, and returned the tape to the glove compartment. According to Driker, when he reached the victim's apartment, the victim's son was the only person there. They allegedly had an argument and an altercation during which Driker said he picked up the jewelry box and pushed it at the son as they stood in the bedroom.
The jury obviously disbelieved defendant's testimony and alibi and returned convictions for robbery and burglary.
We are satisfied that with respect to the use of the videotaped depositions at trial Judge Menza meticulously protected defendant's constitutional rights. We reject defendant's contentions challenging the use of the videotaped deposition, and uphold Judge Menza's determination essentially for the reasons stated in his written opinion on that aspect in State v. Driker, supra (204 N.J. Super. at 559). Defendant's claim that his Sixth Amendment confrontation rights were not adequately safeguarded is without merit. He was afforded the opportunity to be present at the deposition and waived it. Defendant *471 also had the opportunity for cross-examination. The conditions in State v. Sheppard, 197 N.J. Super. 411, 442 (Law Div. 1984), were not binding on the trial court and are not binding on us. Moreover, that case involved testimony by a child of tender years in a sex abuse case and the use of a video monitor from an adjoining room to the courtroom. The testimony therein was given at the trial and was being heard and viewed simultaneously by the jury and the participants in the trial.
In his written opinion on the videotaped deposition, Judge Menza relied in part on rules relating to Civil Practice. State v. Driker, supra (204 N.J. Super. 558). The Civil Practice Rules have been expressly amended to allow the use of videotape depositions in civil cases. We note that even before the adoption of R. 4:14-9 on July 21, 1980, effective September 8, 1980, it had been held that videotape depositions were permissible under R. 4:16-1. See Blumberg v. Dornbusch, 139 N.J. Super. 433 (App.Div. 1976) and Mills v. Dortch, 142 N.J. Super. 410 (Law Div. 1976). There is no reason that the same reasoning should not apply to R. 3:13-2 which deals with the use of deposition testimony of unavailable witnesses in criminal cases even though the Criminal Practice Rules do not expressly provide for videotape depositions. Where, as here, the constitutional rights of defendant were taken into account and protected, the use of videotaped depositions is appropriate in a criminal proceeding where a witness is unavailable. Moreover, our Rules of Court contemplate such adaptability and flexibility by the statement that:
Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes. [R. 1:1-2.]
We reject as without merit defendant's claim, raised for the first time on appeal, that the prosecutor's reference in summation to defendant's failure to call as a witness either his girl friend or her 10 year old son, created some improper inference regarding defendant's obligation to produce a witness *472 at trial. We find no impropriety in the comment. Defendant had testified and given the alibi that he was with his girl friend's 10 year old son in the early part of the day of the crime, and with her and her son in the afternoon when they went to the beach. The prosecutor did request a "Clawans"[1] charge after defendant presented his case. In our view this was sufficient to alert defendant to the fact that the prosecutor intended to comment on defendant's failure to produce witnesses to support his alibi.
Technically, the trial judge should have ruled at that time on the requested Clawans charge, and in any event before summation started. He did not rule on that request until after the summations were given. No objection was raised below. Although it was error for him not to have ruled before the start of summations, see State v. Carter, 91 N.J. 86, 128 (1982), that omission is not sufficient to require reversal. We are satisfied that defendant understood that the prosecutor was expressing an intent to comment on the absence of these witnesses in summation. The failure to object indicates that experienced counsel did not see any error that affected the result. See State v. Wilbely, 63 N.J. 420, 422 (1973). We find no plain error which would warrant disturbing the verdict. Ibid. Moreover, defendant had already testified, and there was no infringement on his Fifth Amendment rights under the circumstances. The prosecutor was free to argue that defendant had not produced any of the witnesses to corroborate his story. See State v. Hickman, 204 N.J. Super. 409 (App.Div. 1985).
Finally, we turn to defendant's claim that the sentence is excessive. Our review of the record, including the nature of the offenses and their attendant circumstances, the information disclosed by the report of the pre-sentence investigation, and the reasons for the sentence given by the judge, satisfies us *473 that there are no compelling circumstances warranting our interference with the sentence, which was within the judge's sentencing discretion. State v. Roth, 95 N.J. 334 (1984); State v. Butler, 89 N.J. 220, 232 (1982); and State v. Whitaker, 79 N.J. 503 (1979).
Affirmed.
NOTES
[1] State v. Clawans, 38 N.J. 162 (1962).