SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Stephanie Washington v. Carlos A. Perez** (A-10-13) (072522)

**Argued March 17, 2014 -- Decided September 10, 2014**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, in the context of a personal injury trial where a party declined to present the testimony of expert witnesses whose opinions had been disclosed pursuant to the discovery rules, the Court considers the principles established in State v. Clawans, 38 N.J. 162 (1962) and State v. Hill, 199 N.J. 545 (2009), which set forth the standard for determining whether to issue an adverse inference jury charge when a party fails to call a witness.

In December 2006, plaintiff Stephanie Washington's car was struck by a bus driven by defendant Carlos A. Perez and owned by defendant Olympia Trails. Plaintiff, who had suffered injuries following a 2003 motor vehicle collision, declined the offer of an ambulance because she had no apparent injuries and was not bleeding. However, she later began experiencing aching and stiffness that worsened overnight. Approximately seven weeks after the accident, plaintiff was examined by an orthopedic surgeon, Craig H. Rosen, M.D., who diagnosed her with a herniated disc in her cervical spine. She subsequently was treated by a pain specialist, neurologist, and chiropractor and received epidural-injection therapy from her primary care physician. Although plaintiff initially did not miss work as a result of the accident, she later began taking days off and was granted disability early retirement in 2009.

Plaintiff filed a complaint, asserting negligence claims and seeking compensatory damages. Plaintiff's expert, Rosen, opined that the 2006 accident had aggravated her pre-existing cervical sprain and caused a small herniation in a cervical disc. Defendants retained two experts, Scott R. Sharetts, M.D., a neurologist, and Gerald D. Hayken, M.D., an orthopedist. In their reports, Sharetts opined that the 2006 accident had exacerbated plaintiff's prior injuries and Hayken opined that plaintiff's cervical and radicular symptoms appeared more pronounced following the 2006 accident. Although defendants served both reports on plaintiff's counsel and identified the doctors as expert witnesses expected to testify at trial, they never called them to testify. Plaintiff's counsel's summation focused on the uncalled experts, suggesting that defendants had lied to the jury. On plaintiff's request, the court issued an adverse inference charge, instructing the jury that, if defendants would be expected to produce Sharetts and Hayken, then the jurors could infer from their non-production that their testimony would be adverse to defendants' interests. The jury awarded plaintiff $500,000 for pain and suffering and $242,000 for lost wages.

Defendants moved for a new trial or remittitur, disclosing for the first time that Hayken had been unavailable to testify during the trial. The court denied the motion, and defendants appealed. The Appellate Division reversed, concluding that plaintiff failed to show that the experts were peculiarly within defendants' control or that their testimony would have been superior to that which was already utilized. Finding that the adverse inference charge had inflicted palpable harm on defendants, the panel remanded the case to the trial court for a new trial. This Court granted plaintiff's petition for certification. 215 N.J. 487 (2013).

**HELD:** Given the significant distinctions between fact and expert witnesses, and the array of reasons why a party may choose not to call a previously designated expert witness to testify, an adverse inference charge should rarely be invoked to address the absence of an expert.

1. New Jersey law has long recognized the critical importance of accurate and precise jury instructions. Appellate review of jury instructions requires scrutiny of the allegedly erroneous charge within the context of the charge as a whole, as well as an inquiry as to whether any error may have affected the trial's result. Reversible error occurs where the outcome might have been different had the instruction been correct. Generally, erroneous instructions on material points are presumed to be reversible error. (pp. 15-16)

2. In the event a party fails to produce a witness who it is within that party's power to produce and who should have

been produced, the factfinder may invoke the adverse inference rule to infer that the witness's evidence is

unfavorable to the party's case. New Jersey courts first acknowledged the rule more than a century ago, and this Court has consistently applied it with caution, utilizing a case-specific analysis. This approach was explained in State v. Clawans, 38 N.J. 162, 170-71 (1962), in which the Court noted that the theoretical basis for the inference – that the non-producing party believed the missing witness would elicit harmful testimony – only exists in the absence of an alternative explanation for the witness's failure to appear. Consequently, where a witness is unavailable, biased against the party who would otherwise be expected to call him or her, or if the testimony would be "cumulative, unimportant or inferior" to other already-provided testimony, an adverse inference charge would be improper. Id. at 171. (pp. 16-22)

3. The principles established in Clawans were refined in State v. Hill, 199 N.J. 545 (2009), which set forth a four-pronged test for determining whether to grant a request for an adverse inference charge. Specifically, courts must make findings as to whether: (1) the uncalled witness is peculiarly within one party's control or power, or there is a special relationship between the party and witness, or the party has superior knowledge of the witness's identity or expected testimony; (2) the witness is practically and physically available to the party; (3) the testimony of the uncalled witness will elucidate relevant and critical facts in issue; and (4) the uncalled witness's testimony appears to be superior to that already utilized with respect to the fact to be proven. Id. at 561-62. In both civil and criminal trials, the adverse inference charge should only be given if the party seeking it gives appropriate notice to the court and counsel and the trial court, after carefully considering the four factors identified in Hill, determines that it is warranted. (pp. 22-28)

4. In both Clawans and Hill, the witnesses whose absence prompted the adverse inference charge were fact witnesses. Here, the witnesses were experts. While this Court has not previously considered the propriety of a Clawans charge as applied to situations where designated experts were not called at trial, Appellate Division panels have reached divergent results. The Court notes several pertinent, significant distinctions between the testimony of expert witnesses and fact witnesses. First, in light of the disclosure and discovery rules applicable to expert witnesses, the content of an expert's testimony is unlikely to be a mystery to any parties. Second, an expert is unlikely to be in exclusive possession of factual evidence that would justify an adverse inference charge since any facts or data supporting the expert's opinion must be disclosed in his or her report. Third, aside from cases where the testimony of at least one expert is necessary to withstand summary judgment and meet a party's burden of proof, a party who has disclosed the name and opinion of a particular expert is not compelled to call that expert to testify at trial. Finally, in contrast to the fact witness setting, there are many strategic and practical reasons that may prompt a party who has retained an expert to decide not to present the expert's testimony at trial, including inability to compensate the expert or unavailability of an expert at the time of trial. Thus, when the witness whom a party declines to call at trial is an expert rather than a fact witness, the factors that may necessitate an adverse inference charge addressing the absence of a fact witness are unlikely to be germane and, consequently, a Clawans charge rarely will be warranted in the case of missing expert witnesses. (pp. 28-34)

5. Applying the Hill factors here, there is no evidence that either Sharetts or Hayken were in defendants' exclusive control and unavailable to testify for plaintiff. Thus, the first Hill factor weighs against the grant of a Clawans charge since plaintiff was on notice prior to trial of the experts' opinions and could have sought to present their testimony at trial. However, it is unclear whether these witnesses were available to appear at trial, rendering the second Hill factor inconclusive. Since their reports showed that the experts would have elucidated certain relevant facts, the third Hill factor weighs to some extent in favor of an adverse inference charge, but the fourth factor suggests a rejection of the request for a Clawans charge because the experts' evidence was corroborative or cumulative to plaintiff's proofs. Accordingly, the Court concurs with the Appellate Division that the trial court erred when it granted plaintiff's application for an adverse inference charge pursuant to Clawans. This error is reversible since the charge, as well as plaintiff's counsel's closing argument, strongly suggested to the jury that defendants did not call the experts because they feared their testimony. (pp. 34-40)

The judgment of the Appellate Division is **AFFIRMED**, and the matter is **REMANDED** to the trial court for a new trial in accordance with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE PATTERSON's opinion.**

2

STEPHANIE WASHINGTON,

    Plaintiff-Appellant,

       v.

CARLOS A. PEREZ, OLYMPIA
TRAILS and OLYMPIA TRAILS BUS
COMPANY,

    Defendants-Respondents.

          Argued March 17, 2014 - Decided September 10, 2014

          On certification to the Superior Court,
          Appellate Division, whose opinion is
          reported at 430 N.J. Super. 121 (2013).

          Brian L. Katz argued the cause for appellant
          (Dansky|Katz|Ringold|York, attorneys).

          Michael K. Tuzzio argued the cause for
          respondents (Ronan, Tuzzio & Giannone,
          attorneys; Mr. Tuzzio and Thomas F. Rinaldi,
          on the brief).

    JUSTICE PATTERSON delivered the opinion of the Court.

    In State v. Clawans, 38 N.J. 162 (1962), and State v. Hill, 199 N.J. 545 (2009), this Court set forth the governing standard that a trial court should apply to determine whether to give an adverse inference jury charge when a party fails to call a witness at trial. This case requires the Court to apply the principles of Clawans and Hill in a setting not previously addressed by the Court: a personal injury trial in which a

party declines to present the testimony of expert witnesses whose opinions have been disclosed in accordance with the discovery rules.

Plaintiff Stephanie Washington claims that she was injured in a motor vehicle accident in New York City as the result of the negligence of defendant Carlos Perez (Perez) and his employer, defendant Olympia Trails Bus Company, Inc. (Olympia Trails). Prior to trial, defendants served the expert reports of two physicians, both of whom opined that plaintiff had sustained injuries in a prior accident, but acknowledged that plaintiff was also injured in the accident from which this case arose. In his opening statement to the jury, defendants' counsel argued that the evidence would show that plaintiff was not injured in the accident at issue in this case. Defendants did not call either of their expert witnesses to the stand.

At the request of plaintiff's counsel, and over defendants' objection, the trial court issued an adverse inference charge. It instructed the jury that if it found that the two experts were witnesses whom defendants would naturally be expected to call at trial, it could infer that the experts' testimony, if presented, would have been adverse to the interests of defendants.

The jury returned a verdict for plaintiff. An Appellate Division panel reversed and remanded the matter for a new trial,

2

holding that the trial court abused its discretion when it gave the adverse inference charge, and that the charge prejudiced defendants. Washington v. Perez, 430 N.J. Super. 121, 131 (App. Div. 2013).

We affirm the Appellate Division's judgment. We hold that given the significant distinctions between fact and expert witnesses, and the array of reasons why a party may choose not to call a previously designated expert witness to testify, an adverse inference charge should rarely be invoked to address the absence of an expert. We concur with the Appellate Division that the record did not support an adverse inference charge under the standard set forth in Hill. Accordingly, we remand this case to the trial court for a new trial.

I.

Our review of the facts is based on the testimony and evidence presented by the parties at trial.

On December 20, 2006, when the accident that gave rise to this action occurred, plaintiff was an administrative assistant at the New Jersey Department of the Treasury, Division of Pensions and Benefits. Plaintiff had previously sustained injuries during a 2003 motor vehicle collision. As a result of that accident, plaintiff missed approximately ten weeks of work and pursued a personal-injury action.

3

When her 2006 accident occurred, plaintiff was driving eastbound on 42nd Street in New York City on her way to an appointment. At a stoplight at the intersection of 42nd Street and 8th Avenue, plaintiff pulled up in the left lane next to a bus driven by defendant Perez and owned by defendant Olympia Trails. According to plaintiff, when the light turned green she and Perez proceeded through the intersection, but Perez attempted to steer the bus into the left lane in front of her car. She testified that the bus struck her car, sheared off the passenger side wing mirror and removed the front bumper. She stated that after striking her vehicle, the bus continued down the street and came to a stop at the next intersection. According to defendant Perez, as he was gradually moving his bus into the left lane, plaintiff's car initially moved toward oncoming traffic, as if to go around the bus, and then returned to the left lane, at which point the two vehicles collided.

Plaintiff testified that she declined a police officer's offer to call an ambulance because she had no apparent injuries from the accident and was not bleeding. She stated, however, that she began to experience aching, stiffness and soreness when she returned home that evening. Plaintiff testified that her symptoms worsened overnight but did not prevent her from going to work the following day. She stated that she attempted to see

4

her primary care physician promptly but could not get an immediate appointment.

In February 2007, about seven weeks after the accident, plaintiff was examined by an orthopedic surgeon, Craig H. Rosen, M.D.  Based on the results of an MRI scan performed in May 2007, Dr. Rosen diagnosed plaintiff with a herniated disc in her cervical spine that necessitated pain management.  Thereafter, plaintiff was treated by a pain specialist, who administered trigger-point injections to her spine.  Her primary-care physician also performed epidural-injection therapy on her neck and thoracic spine.  In addition to her primary-care physician, Dr. Rosen and the consulting pain specialist, plaintiff was treated by a neurologist and a chiropractor for her injuries.  Although initially she did not miss work as a result of the 2006 accident, she eventually began taking days off due to her condition.  Subsequently, plaintiff applied for and was granted disability early retirement from her employment in 2009, citing the injuries that she sustained in her 2006 accident as the source of her disability.

Plaintiff filed this action in the Law Division, asserting claims for negligence against defendants and seeking compensatory damages.  Defendants, represented by a different law firm from the firm representing them in this appeal, retained two experts, Scott R. Sharetts, M.D., a neurologist,

5

and Gerald D. Hayken, M.D., an orthopedist.  Dr. Sharetts examined plaintiff on June 14, 2010.  In his report of the same date, Dr. Sharetts opined that as a result of the 2006 accident, plaintiff "sustained an exacerbation of [the] thoracic symptomatology" that she had suffered in the 2003 accident, "as well as cervical and to a degree lumbar musculoskeletal symptomatology."  Dr. Hayken evaluated plaintiff on June 25, 2010.  In his report prepared that day, Dr. Hayken opined that plaintiff's "present thoracic back pain [was] indistinguishable on clinical grounds and objectively from her pre-accident back pain," but that her "cervical and radicular symptoms [appeared] to be significantly more pronounced than they were prior to her [December 20, 2006] injury."[1]

Citing Skibinski v. Smith, 206 N.J. Super. 349 (App. Div. 1985), and Sallo v. Sabatino, 146 N.J. Super. 416 (App. Div. 1976), certif. denied, 75 N.J. 24 (1977), defendants served both reports on plaintiff's counsel with a disclaimer that the reports did not constitute adoptive admissions of defendants. In their pretrial information exchange, submitted pursuant to Rule 4:25-7(b), defendants identified Dr. Sharetts and Dr. Hayken as expert witnesses expected to testify at trial, and

---

[1] Dr. Hayken later supplemented his report after reviewing additional records, but his opinion did not change.

listed no "anticipated problems" for the trial court's consideration.

Plaintiff's counsel designated her treating physician, Dr. Rosen, as her expert witness. In his report, Dr. Rosen opined that although plaintiff had sustained injuries in her 2003 accident, the 2006 accident at issue in this case had aggravated a pre-existing cervical sprain and caused a small herniation in a cervical disc. In testimony videotaped for use at trial, Dr. Rosen was asked about Dr. Hayken's opinion regarding plaintiff's alleged injuries. He testified that Dr. Hayken had opined "that the cervical herniated disc and radiculopathy [were] related to the accident [of December 20, 2006]." This testimony was challenged prior to trial by defendants, who contended that Dr. Rosen had mischaracterized Dr. Hayken's opinion, and sought a redaction of Dr. Rosen's videotaped testimony to remove what they considered to be misleading statements about the defense expert's opinion. Although plaintiff's counsel acknowledged that Dr. Rosen had not accurately characterized Dr. Hayken's opinion, the trial court denied defendants' motion, noting that defendants could call Dr. Hayken as a witness to refute Dr. Rosen's comments. At the pretrial hearing, defendants' counsel advised the trial court and plaintiff's counsel, for the first time, that defendants did not intend to call Dr. Hayken to the stand.

7

During jury selection, the trial court represented to prospective jurors that defendants' experts, Dr. Sharetts and Dr. Hayken, would testify. In determining whether prospective jurors were acquainted with witnesses who would appear at trial, the court identified both physicians as witnesses who would be called by defendant, first describing them as "the physicians who examined the plaintiff," and then identifying the expert witnesses by name. The record does not reflect any objection by defendants to the trial court's reference to Dr. Sharetts and Dr. Hayken, or an indication during jury selection that defendants had decided not to present the testimony of their experts.

During his opening statement, defendants' counsel told the jury that it would hear plaintiff's expert witness, Dr. Rosen, testify on videotape that plaintiff was treated for neck pain for three years prior to her 2006 accident. Defendants' counsel did not mention either Dr. Sharetts or Dr. Hayken, or indicate to the jury whether defendants would present expert testimony. He concluded his opening statement by stating, "[l]adies and gentlemen, the evidence will show that [plaintiff] was not injured in the accident of December 20, 2006."

During plaintiff's case-in-chief, plaintiff testified and presented the videotaped testimony of Dr. Rosen, including the expert's characterization of Dr. Hayken's opinion. Shortly

8

before plaintiff's counsel completed his presentation of evidence, he acknowledged that plaintiff was on notice that Dr. Hayken would not testify on defendants' behalf. He informed the trial court and defendants' counsel that he intended "to seek a negative inference or a [Clawans] charge with respect to the non-production of Dr. Hayken." The trial court did not immediately respond to plaintiff's statement regarding Dr. Hayken. It then granted an application by defendants for access to MRI films, so that the films could be shown to Dr. Sharetts before the expert's anticipated testimony.

Despite the trial court's ruling regarding the MRI, defendants did not call Dr. Sharetts as an expert witness at trial. According to plaintiff's counsel, defendants' counsel advised him just before commencing defendants' case that defendants did not intend to present the testimony of Dr. Sharetts. Defendants' sole witness was defendant Perez, the bus driver. They presented no expert testimony.

At the charge conference conducted following the close of the proofs, plaintiff's counsel renewed his request for an adverse inference jury charge pursuant to Clawans, premised on defendants' failure to call either of their experts as witnesses at trial. Defendants' counsel objected, arguing that a Clawans charge would be inappropriate because the experts' testimony

9

would be cumulative.[2]  With little discussion, the court granted

plaintiff's request for a <u>Clawans</u> charge with respect to

defendants' failure to call their two expert witnesses.  Neither

the trial court nor plaintiff's counsel suggested that a <u>Clawans</u>

charge was necessary because of defense counsel's claim in his

opening statement that the evidence would demonstrate that

plaintiff sustained no injuries in her December 20, 2006,

accident.  Instead, the charge was justified solely by the

absence of Dr. Sharetts and Dr. Hayken from trial.

In his summation, defendants' counsel acknowledged that

defendants had retained experts but elected not to call them.

He attributed that decision to plaintiff's failure to "prove his

case."  Plaintiff counsel's summation focused on the defendants'

failure to call their expert witnesses.  Prompting no objection

from defense counsel, plaintiff's counsel stated to the jury

that, "instead of bringing forth to you evidence[,] [defendants

have] hid evidence from you, [have] avoided you hearing what Dr.

Hayken has to say."  He speculated to the jury that the expert

was not called because his testimony "[did not] support what

---

[2] The trial court initially suggested that, in addition to giving an adverse inference instruction under <u>Clawans</u> against defendants, it would give a <u>Clawans</u> charge against plaintiff because she had not called one of her treating physicians. However, plaintiff objected to the trial court's suggestion on the ground that a treating physician is a witness who can be called by any party.  As a result, the trial court gave a <u>Clawans</u> charge only with respect to defendants' expert witnesses.

10

[defendants would] like you to believe." Plaintiff's counsel also commented to the jury that Dr. Sharetts was not called to testify despite defendants' statement that the evidence would show that plaintiff sustained no injuries in her 2006 accident.

After asking counsel to state the experts' names, the trial court gave the following adverse inference charge:

> Anyway, reference has been made to those doctors as being witnesses in this case and that [defendants have] failed to call him -- them to testify. If you find that if those doctors are people or -- or a person whom you would naturally expect the defendant to produce to testify, you have a right to infer from the non-production of the witness, that his testimony would be adverse to the interests of the . . . defendant. The basis for this rule is that where a party fails to produce a witness who probably could clarify certain facts in issue, it raises a natural inference that the non-producing party fears that the testimony of the witness on the issue would be . . . unfavorable to him or her. However, an adverse inference should not be drawn if [Hayken] or [Sharetts] is not a witness whom the defendant would naturally be expected to produce, nor if there . . . has been a satisfactory explanation for his non-production nor if he is equally available to both parties, nor if his testimony would be comparatively unimportant, cumulative in nature or inferior to that which you already have before you. Whether or not an adverse inference should be drawn is for your determination based upon the principles that I have just set forth.

The jury returned a verdict in plaintiff's favor, awarding $500,000 to compensate her for pain, suffering, disability,

11

impairment and loss of enjoyment of life, and $242,000 to compensate her for lost wages.

Defendants filed a motion for a new trial or, in the alternative, remittitur. For the first time, defendants' counsel disclosed to the trial court and plaintiff's counsel that his pretrial telephone calls to Dr. Hayken had not been returned, and that Dr. Hayken had been unavailable to testify during the scheduled trial. Defendants' counsel provided no explanation for defendants' failure to present the testimony of Dr. Sharetts.

The trial court responded that it was unhappy with plaintiff counsel's argument to the jury that the defense experts were not called because defendants intended to conceal evidence. The court commented that it "should probably grant a new trial," but would not, given the lack of experts testifying for the defense. The court denied defendants' motion.

Defendants appealed, and the Appellate Division reversed the trial court's determination. Washington, supra, 430 N.J. Super. at 123. The panel concluded that plaintiff had failed to make a showing as to two of the four factors set forth by this Court in Hill, specifically that the experts were "'peculiarly within the control or power of only the one party,'" and that their testimony would have been "'superior to that already utilized in respect to the fact to be proven.'" Id. at 130-31

12

(quoting Hill, supra, 199 N.J. at 561).[3] The panel concluded that the trial court's adverse inference charge had inflicted "palpable" harm on defendants, placing "the weight of the court's authority behind plaintiff's argument about the missing witness." Id. at 131 (citing Wild v. Roman, 91 N.J. Super. 410, 415 (App. Div. 1966)). It remanded the case to the trial court for a new trial, and declined to reach the remaining issues raised by defendants. Id. at 125, 131.

The Court granted plaintiff's petition for certification. 215 N.J. 487 (2013).

## II.

Plaintiff argues that the Appellate Division improperly reversed the trial court's determination. She contends that the Appellate Division failed to apply a sufficiently deferential standard of review, and urges the Court to review the trial court's determination under an abuse of discretion standard. She asserts that she provided adequate proof to satisfy the test articulated by this Court in Clawans because defendants' expert witnesses were clearly witnesses who would be expected to testify at trial, defendants had the power to produce them by

---

[3] The panel noted divergent opinions in the Appellate Division regarding whether an adverse inference charge would ever be appropriate when the witness in question was an expert, but declined to address that issue because the parties had not briefed it. See Washington, supra, 430 N.J. Super. at 129-30.

13

live testimony or by videotape, and the experts' testimony would have been superior to a defense presentation devoid of expert testimony. Citing Graham v. Gielchinsky, 126 N.J. 361 (1991), plaintiff argues that she was not in a position to call the defense expert witnesses to testify because the experts could not be compelled to testify and would require compensation to appear at trial. She contends that, consequently, the expert witnesses were unavailable to testify on her behalf. Plaintiff characterizes the trial court's Clawans charge as a "modified" charge that permitted, rather than compelled, the jury to draw an adverse inference, and argues that if the charge constituted error, any such error was harmless.

Defendants counter that the Appellate Division properly reviewed the trial court's determination de novo, and that the Clawans charge constituted reversible error in this case. They note that the trial court did not apply the four-factor analysis adopted by this Court in Hill when it agreed to give the Clawans charge, and that an application of those factors to the setting of this case demonstrates that no adverse inference instruction was warranted. Defendants contend that Dr. Sharetts and Dr. Hayken were not solely under defendants' control, and that plaintiff could have called the expert witnesses to testify had she considered their opinions helpful to the jury. Defendants urge the Court to affirm the Appellate Division's determination.

14

III.

Our law has long recognized the critical importance of accurate and precise instructions to the jury. "It is fundamental that '[a]ppropriate and proper charges to a jury are essential for a fair trial.'" Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (alteration in original) (quoting State v. Green, 86 N.J. 281, 287 (1981)). "A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (internal quotation marks omitted). "The jury charge 'should set forth an understandable and clear exposition of the issues.'" Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 464 (2000) (quoting Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210 (1984)).

Appellate review of a challenged jury instruction entails not only scrutiny of the charge itself, but an inquiry as to whether an erroneous charge may have affected the trial's result. Notably, "in construing a jury charge, a court must examine the charge as a whole, rather than focus on individual errors in isolation." Viscik, supra, 173 N.J. at 18 (citing Ryder v. Westinghouse Electric Corp., 128 F.3d 128, 137 (3d Cir. 1997), cert. denied, 522 U.S. 1116, 118 S. Ct. 1052, 140 L. Ed. 2d 115 (1998)). "As a general matter, [appellate courts] will

15

not reverse if an erroneous jury instruction was 'incapable of producing an unjust result or prejudicing substantial rights.'" Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div.) (quoting Fisch v. Bellshot, 135 N.J. 374, 392 (1994)), certif. denied, 216 N.J. 4 (2013).  However, erroneous jury instructions "constitute[] reversible error where the jury outcome might have been different had the jury been instructed correctly."  Velazquez, supra, 163 N.J. at 688.  Generally, "'erroneous instructions on material points are presumed to be reversible error.'"  McClelland v. Tucker, 273 N.J. Super. 410, 417 (App. Div. 1994) (quoting State v. Martin, 119 N.J. 2, 15 (1990)).  Applying that standard of review, the Court considers the trial court's adverse inference charge.

### A.

When "a party fails to produce a witness who is within its power to produce and who should have been produced," the adverse inference rule permits the factfinder "to infer that the witness's evidence is unfavorable to the party's case."  Black's Law Dictionary 62 (9th ed. 2009).  As the United States Supreme Court has observed, "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."  Graves v. United States, 150 U.S. 118, 121, 14 S.

16

Ct. 40, 41, 37 L. Ed. 1021, 1023 (1893). As the Third Circuit has noted, "a missing witness charge has long been accepted as appropriate even in criminal cases." United States v. Am. Radiator & Standard Sanitary Corp., 433 F.2d 174, 206 (3d Cir. 1970) (citing Graves, supra, 150 U.S. at 121, 14 S. Ct. at 41, 37 L. Ed. at 1023), cert. denied, 401 U.S. 948, 91 S. Ct. 929, 28 L. Ed. 2d 231 (1971); see also United State v. Restaino, 369 F.2d 544, 547 (3d Cir. 1966) (noting in context of criminal case, that inference undergirding missing witness charge is of "ancient lineage" and "enjoys almost universal acceptance").

Our courts first acknowledged the adverse inference charge more than a century ago:

> [T]he rule seems to be, according to the weight of authority, that the non-production of a witness, either by the state or the defendant, may be considered by the jury in weighing the effect of evidence applicable to the subject in dispute, but it will not justify an arbitrary presumption of suppression of evidence, nor does it raise any presumption of guilt or innocence.
>
> [State v. Callahan, 76 N.J.L. 426, 428 (Sup. Ct. 1908), aff'd, 77 N.J.L. 685 (E. & A. 1909).]

Similarly, in State v. Elliott, it was held that the failure of both the State and the defendant to call certain witnesses entitled the jury to infer "that [the witnesses] would not testify favorably" for either party. 129 N.J.L. 169, 170-71 (Sup. Ct. 1942), aff'd, 130 N.J.L. 174 (E. & A. 1943).

17

Notwithstanding the expansive reach of the adverse inference rule articulated by the United States Supreme Court in Graves, and followed by New Jersey courts for many years, this Court has consistently applied the rule with caution, requiring a case-specific analysis to determine whether an adverse inference charge is warranted in a particular setting. The Court first addressed the adverse inference charge in State v. Cooper, 10 N.J. 532 (1952). Noting that "the mere failure to produce a witness does not of itself permit the jury to infer that" the witness would have contradicted the testimony of other prosecution witnesses, the Court held that the charge was inappropriate when the absence of the disputed witness was explained by his confinement to his home following surgery. Id. at 566; cf. Michaels v. Brookchester, Inc., 26 N.J. 379, 391 (1958) (finding that trial court did not err by charging "that [the] defendant's unexplained failure to produce two of its employees permitted an inference that their testimony would have been unfavorable to [the defendant]").

The Court's case-specific approach to the adverse inference charge was explained in Clawans, supra, 38 N.J. at 170-72. There, the State prosecuted a criminal defense attorney for suborning perjury, based upon a courthouse conversation that the attorney was alleged to have conducted with an inmate in the presence of a corrections officer and another inmate. Id. at

18

165-66. Although two detectives stood nearby and observed the defendant lawyer speaking with the inmate, they could not testify about the substance of the conversation. Id. at 167. No trial witnesses corroborated the inmate's testimony that the attorney had instructed her to testify falsely. Ibid. Although the State admitted that the corrections officer was available to testify, it did not call either the officer or the second inmate to testify regarding the conversation that they allegedly witnessed. Id. at 167, 173. The defendant requested that the trial court issue an adverse inference charge that mandated, rather than permitted, the jury to conclude that the State's failure to call these two witnesses meant that the disputed conversation had never occurred. Id. at 170. The trial court declined that request. Ibid. The jury convicted the defendant attorney, and she appealed. Id. at 168.

This Court noted that the theoretical basis for the inference -- the non-producing party's purported concern that the missing witness would elicit testimony harmful to its case -- only exists in the absence of an alternative explanation for the witness's failure to appear:

> [The] failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears [that] exposure of those facts would be unfavorable to him. But such an inference cannot arise except upon certain

19

conditions and the inference is always open to destruction by explanation of circumstances which make some other hypothesis a more natural one than the party's fear of exposure.

[Id. at 170-71 (internal citations omitted).]

The Court commented that an adverse inference charge would be improper if the witness were unavailable, if the witness were biased against the party who would otherwise be expected to call him or her, or if the witness's testimony "would be cumulative, unimportant or inferior to what had been already utilized." Id. at 171. It rejected the notion that an adverse inference should never be raised when a witness is available to both parties, holding:

[T]he more logical approach views this situation as posing a possible inference against both [parties], the questions of the existence and strength of the inference against either being dependent upon the circumstances of the case, including whether one party has superior knowledge of the identity of the witness and what testimony might be expected from him, as well as the relationship of the witness to the parties.

[Id. at 171-72.]

Applying these principles to the case before it, the Court held in Clawans that the defendant was not entitled to the jury charge that she had requested -- a charge that would have mandated, not simply authorized, an inference that the disputed conversation never occurred. Id. at 170, 174-75. It held,

20

however, that the defendant was entitled to a narrower adverse inference instruction, permitting the jury to infer that the testimony of the corrections officer, who had clearly heard the disputed conversation and whose absence was unexplained by the State, would have been unfavorable to the State. Id. at 174-75. Accordingly, the Court reversed the defendant's conviction and remanded for a new trial. Id. at 175.

Thus, in Clawans, the Court confirmed that the adverse inference charge should not be a reflexive response whenever a party fails to call an expected witness. Id. at 170-71. Instead, the Court required that the trial court carefully analyze the specific facts before it. Id. at 172. To that end, the Court recommended that a party seeking the benefit of an adverse inference charge provide sufficient notice so that the opposing party has a meaningful opportunity to respond. Ibid.; see also State v. Irving, 114 N.J. 427, 442 (1989) (noting that notice envisioned by the Court in Clawans is intended "to provide the party accused of non-production an opportunity either to call the witness or to explain his failure to do so"). With the benefit of counsel's explanation for the witness's absence, the Court in Clawans anticipated that a trial court would thoughtfully analyze the witness's potential testimony, circumstances, and relationship with each party, and would decline to give an adverse inference charge if it were

21

unwarranted.  Clawans, supra, 38 N.J. at 172; see Irving, supra, 114 N.J. at 442.

The principles of Clawans were refined in Hill, supra, which arose from a defendant's conviction for robbery on a theory of accomplice liability.  199 N.J. at 550.  There, the defendant failed to call as a witness his nephew, who was involved in the robbery for which the defendant was tried. Ibid.  The defendant testified at trial that he did not know the exact location of his nephew, but believed that he was in Alabama.  Id. at 554.  Citing defendant's family relationship with the missing witness, the potential superiority of the nephew's testimony, and the lack of evidence showing that defendant had sought to locate his nephew or attempt to produce him at trial, the trial court gave a Clawans charge regarding the nephew.  Id. at 556-57.  It instructed the jury that it had the right to infer that had the witness appeared, his testimony would have been adverse to the interests of the defendant.  Id. at 557.  On appeal, the Appellate Division held that the Clawans charge was inappropriate, but that it constituted harmless error.  Id. at 558.

This Court observed that "'[i]t is one thing for counsel in his summation to point to the absence of particular witnesses; it is quite another when the court puts the weight of its authority behind such a summation by telling the jury it may

22

draw an adverse inference from their absence.'" Id. at 561 (quoting Wild, supra, 91 N.J. Super. at 415). Accordingly, the Court restricted the use of the Clawans charge in several significant respects. First, the Court made mandatory the notice procedure suggested in Clawans: "[t]he party seeking the jury charge must notify the opposing party and the judge, outside the presence of the jury, must state the name of the witness . . . not called, and must set forth the basis for the belief that the witness . . . [has] superior knowledge of relevant facts." Id. at 560-61 (citing Clawans, supra, 38 N.J. at 172). Second, the Court prescribed a four-pronged test to be applied by a trial court when determining whether to grant a request for an adverse inference charge in a particular setting:

> When making a determination about a Clawans charge, a court must demonstrate that it has taken into consideration all relevant circumstances by placing, on the record, findings on each of the following:
>
> > "(1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and

23

> (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven."
>
> [Id. at 561-62 (alteration in original) (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985), certif. denied, 103 N.J. 495 (1986)).]

Finally, noting the risk that a Clawans charge could mislead or confuse the jury about the State's burden of proof, the Court held "that it would be the rare case, if any, that would warrant" such a charge against a criminal defendant. Id. at 566-67; see also State v. Velasquez, 391 N.J. Super. 291, 306 (App. Div. 2007) (noting "the need for trial courts to exercise caution in authorizing the inference"). Accordingly, the Court reversed the defendant's conviction, and remanded for a new trial. Hill, supra, 199 N.J. at 570. Thus, although a Clawans charge against the State may be an appropriate remedy "to balance the scales of justice" in favor of a defendant in a criminal case, State v. Dabas, 215 N.J. 114, 140 (2013), it should rarely, if ever, be used against a defendant in the wake of this Court's decision in Hill, supra, 199 N.J. at 566-67. See Model Jury Charge (Criminal), "Witness -- Failure of the Defendant to Produce" (June 14, 2010).

As the Court observed in Clawans, supra, the adverse inference charge may be given in civil as well as criminal trials. 38 N.J. at 171. In the civil setting, as in criminal

24

cases, courts have recognized the prejudicial impact of a Clawans charge, and have addressed a litigant's request for such a charge with caution. This Court noted in Gonzalez v. Safe & Sound Sec. Corp. that "[t]he adverse inference is not to be utilized when the witness is unavailable or likely to be prejudiced against the party calling him." 185 N.J. 100, 118 (2005). As a federal appellate court has noted in the setting of a civil case, "[a]n adverse inference instruction is a powerful tool in a jury trial" that "when not warranted, creates a substantial danger of unfair prejudice." Morris v. Union Pac. R.R., 373 F.3d 896, 900, 903 (8th Cir. 2004). Thus, courts have recognized that in civil cases, as in criminal cases, an adverse inference charge can have a decisive impact upon a jury's determination.

In Wild, supra, the Appellate Division noted that our courts have not construed Clawans to "always compel[] the giving of [the adverse inference] charge when a possible witness does not appear, even upon request and even if the rules laid down in Clawans . . . are complied with." 91 N.J. Super. at 414. There, the panel reversed a trial court's decision to give a Clawans charge after the plaintiffs, who alleged dental malpractice against the defendant, failed to call certain of their treating dentists "whose names appeared in the case." Id. at 413, 418-19 (internal quotation marks omitted). The panel

25

noted that "there was ample reason for plaintiffs' attorney to conclude that the testimony of [the dentists] . . . was unnecessary and not worth the fees they would necessarily charge for testifying," and acknowledged "that it would have been an imposition upon these [dentists] to disrupt their practices for the little that they could contribute by way of testimony." Id. at 418; see also ASHI-GTO Assocs. v. Irvington Pediatrics, P.A., 414 N.J. Super. 351, 361 (App. Div.) (affirming trial court's denial of request for adverse inference charge regarding fact witness, who was "equally available to both sides"), certif. denied, 205 N.J. 96 (2010); Anderson v. Somberg, 158 N.J. Super. 384, 394-95 (App. Div.) (affirming trial court's denial of request for adverse inference charge regarding proposed metallurgical expert witness because, among other things, party requesting charge failed to demonstrate that expert witness "was not equally available" to be called to testify), certif. denied, 77 N.J. 509 (1978); Hill v. Newman, 126 N.J. Super. 557, 564 (App. Div. 1973) (affirming trial court's denial of defendant's request for adverse inference charge regarding fact witness and noting that "[t]he trial judge emphasized [the witness's] availability to all parties in denying [the] defendant's request"), certif. denied, 64 N.J. 508 (1974).

Nothing in the Court's decision in Hill, supra, limits the four-part test set forth in that case to criminal trials. 199

26

<u>N.J.</u> at 561-62. In civil cases as well as criminal trials, the adverse inference charge should only be given if the party seeking it gives appropriate notice to the court and counsel, and the trial court, after carefully considering the four factors identified in <u>Hill</u>, determines that it is warranted. <u>Ibid.</u>[4] When the court's findings with respect to those factors do not support an adverse inference charge, the jury is free to independently draw an inference from the absence of an important

---

[4] In the instant case, the trial court substantially followed a section of the <u>Model Jury Charge (Civil) 1.18</u>, "Witness -- Failure of a Party to Produce; Adverse Inference" (Revised Aug. 2011) [Hereinafter "Model Civil Charge 1.18"], entitled "Alternative A." This portion of Model Civil Charge 1.18 instructs the jury to determine whether an adverse inference should be drawn, based upon the following factors: (1) whether the witness is one "whom the plaintiff/defendant would naturally be expected to produce;" (2) whether "there has been a satisfactory explanation for [the witness's] non-production;" (3) whether the witness "is equally available to both parties;" and (4) whether the witness's "testimony would be comparatively unimportant, cumulative in nature or inferior to that which you already have before you." In contrast to <u>Model Jury Charge (Criminal)</u>, "Witness -- Failure of the Defendant to Produce" (June 14, 2010), and <u>Model Jury Charge (Criminal)</u>, "Witness -- Failure of the State to Produce" (June 14, 2010), Model Civil Charge 1.18 does not direct the trial court to conduct the inquiry required by <u>Hill</u> before giving a <u>Clawans</u> charge. Moreover, Model Civil Charge 1.18 directs the jury -- not the trial court -- to determine why a particular witness did not appear at trial. Such an inquiry inappropriately compels an attorney for a party seeking to avoid an adverse inference charge to explain to a jury his or her efforts to locate or communicate with a witness, and invites counsel to argue before the jury as to whether a witness is available to testify on behalf of either side. We urge the Model Civil Jury Charge Committee to review Model Civil Charge 1.18 to ensure that it complies with <u>Hill</u>, and that it does not allocate to the jury determinations that are properly conducted by the trial judge.

27

witness.  The trial court, however, maintains its neutrality with respect to that inference.

                                    B.

     In this case, the witnesses whose absence prompted the Clawans charge were not fact witnesses, as were the witnesses disputed in Clawans and Hill, but were experts retained by a party.  This Court has not previously analyzed the adverse inference charge in the expert witness setting.[5]

     As the Appellate Division noted in the instant case, prior Appellate Division panels have reached divergent results regarding the propriety of a Clawans charge as applied to expert witnesses.  See Washington, supra, 430 N.J. Super. at 129-30 (declining to reach the issue "in light of the parties' failure to brief it"); see also Bradford v. Kupper Assocs., 283 N.J. Super. 556, 580 (App. Div. 1995) (holding that "[p]laintiffs could have subpoenaed the potential defense witnesses" and that "the failure of a party to call an expert who was earlier deposed does not normally justify an adverse inference charge")

---

[5] Neither of the two prior cases decided by the Court involving adverse inference issues in the expert setting directly raised the issue that is now before the Court.  See Bender v. Adelson, 187 N.J. 411, 435 (2006) (holding that trial court should not have permitted plaintiff's counsel to argue that jury should draw adverse inference because of absence of defendants' expert witnesses, given trial court's entry of order barring defendants from calling witnesses at trial); Biruk v. Wilson, 50 N.J. 253, 261 (1967) (reviewing trial court's application of adverse inference charge to fact witness, but not its application of charge to expert witnesses).

(internal quotation marks omitted), certif. denied, 144 N.J. 586 (1996); Genovese v. N.J. Transit Rail Operations, Inc., 234 N.J. Super. 375, 382 (App. Div.) (holding that party is ordinarily entitled to benefit of adverse inference "if an expert witness is not produced at trial and the R. 4:14-9(e) deposition is not offered"), certif. denied, 118 N.J. 195 (1989); McQuaid v. Burlington Cnty. Mem'l Hosp., 212 N.J. Super. 472, 476 (App. Div. 1986) (stating that "[e]ven were [the expert] not equally available to both parties, the failure of a party to call an expert witness does not normally justify an adverse inference charge"); Anderson, supra, 158 N.J. Super. at 395 (same); Parentini v. S. Klein Dep't Stores, Inc., 94 N.J. Super. 452, 457-58 (App. Div.) (holding that trial court's decision to give adverse inference charge regarding expert witness did not constitute plain error, although "[t]here was no basis for an assumption that [the expert's] testimony would have been favorable or unfavorable to anyone"), certif. denied, 49 N.J. 371 (1967). In short, no definitive rule has developed in our case law regarding the use of adverse-inference charges when expert witnesses who are designated by a party are not called to testify at trial.

There are significant distinctions between the testimony of expert witnesses and the testimony of fact witnesses, which are pertinent to the adverse-inference charge. First, the content

29

of an expert witness's testimony is unlikely to be a mystery to the parties and their counsel when a case proceeds to trial. Expert witnesses in civil cases are subject to disclosure and discovery rules that do not apply to fact witnesses. Pursuant to Rule 4:10-2(d)(1), the identity of an expert witness whom a party "expects to call at trial," is discoverable through interrogatories. R. 4:10-2(d)(1). Interrogatories served upon a party pursuant to Rule 4:10-2(d)(1) "may also require, as provided in [Rule] 4:17-4(a), the furnishing of a copy of that person's report." R. 4:10-2(d)(1). "If an interrogatory requires a copy of the report of an expert witness or treating or examining physician as set forth in [Rule] 4:10-2(d)(1)," the proffered report must state the expert's "opinions and the basis therefor," identify "the facts and data considered in forming the opinions," set forth the expert's qualifications, including a list of publications for the preceding ten years, and disclose "whether compensation has been or is to be paid for the report and testimony and, if so, the terms of the compensation." R. 4:17-4(e). The expert witness may be deposed "as to the opinion stated" in his or her report, with the party conducting the deposition responsible for the payment of "a reasonable fee for the appearance." R. 4:10-2(d)(2).

In short, our rules afford to a civil litigant broad discovery of the expert witnesses whom an adversary expects to

call to testify at trial.  In contrast to the testimony of a fact witness, the opinion of an expert witness is rarely a surprise to opposing counsel in a civil trial.

Second, an expert is unlikely to be in exclusive possession of factual evidence that would justify an adverse inference charge.  Depending upon the nature of the case and the strategy of the party, an expert may base his or her conclusions entirely on facts developed by others, or conduct his or her own investigation in accordance with the court rules.  See, e.g., R. 4:18-1(a) (authorizing inspection of documents and tangible things, and "entry upon designated land or other property . . . for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon"); R. 4:19 (providing for physical and mental examinations by expert witnesses "in an action in which a claim is asserted by a party for personal injuries or in which the mental or physical condition of a party is in controversy").  When a physical examination is conducted pursuant to Rule 4:19, or a party voluntarily submits to a physical examination by an opposing expert, Rule 4:10-2(d)(1) provides for discovery regarding the expert "whether or not [the expert is] expected to testify."

Thus, although an expert may develop factual information and present it at trial, any facts or data that support the

expert's opinion must be disclosed in his or her report. R. 4:17-4(e). Rarely will an expert be in a position to reveal previously undisclosed factual information, for the first time, on the stand at trial. Given the broad expert disclosures compelled by our rules, it is the unusual setting in which a party's decision not to call an expert witness will be prompted by the party's fear that the expert will reveal unfavorable facts that would otherwise not be disclosed. Clawans, supra, 38 N.J. at 170-71.

Third, notwithstanding the detailed requirements that govern the development of expert witness testimony and mandate expert discovery, our court rules do not compel a litigant who has disclosed the name and opinion of a particular expert to call that expert to testify at trial. There are, of course, categories of cases in which the testimony of at least one expert is necessary to withstand a motion for summary judgment and to meet the party's burden of proof.[6] Subject to that

_____

[6] See, e.g., Rosenberg v. Cahill, 99 N.J. 318, 327 (1985) (stating that under circumstances of case, "competent expert testimony" was necessary "to establish the applicable duty of care with respect to the proper chiropractic practices"); Schueler v. Strelinger, 43 N.J. 330, 345-46 (1964) (reversing finding of negligence against defendant doctor and holding that "evidence of a deviation from accepted medical standards must be provided by competent and qualified physicians"); Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215-16 (App. Div.) (affirming grant of summary judgment to defendant skydiver and holding that "expert testimony was necessary to establish what standard of care applied"), certif. denied, 174 N.J. 43

constraint, however, our rules do not preclude a party from choosing among multiple experts identified before trial, or foregoing the presentation of expert testimony entirely.

Fourth, in contrast to the fact witness setting, there are many strategic and practical reasons that may prompt a party who has retained an expert witness to decide not to present the expert's testimony at trial. Expert witnesses are almost always compensated for their time; a party may decide against calling a particular expert at trial to save resources. A litigant may retain and identify multiple expert witnesses in the same field of expertise, reserving until trial the selection of the one best suited for the case. A plaintiff might settle his or her dispute with one defendant while proceeding to trial against another, and abandon plans to call an expert whose testimony focused upon the defendant who has settled. An expert's testimony may no longer be relevant because a previously contested issue has been resolved. An expert may prove to be unavailable when and where the case proceeds to trial.

---

(2002); Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 327, 341-42 (App. Div. 2000) (holding that plaintiffs' failure to proffer expert testimony in support of defective design claim against manufacturer of train car emergency unlock mechanism warranted grant of summary judgment in favor of defendant manufacturers); Giantonnio v. Taccard, 291 N.J. Super. 31, 43-44 (App. Div. 1996) (holding that expert testimony was necessary to establish standard of care in safe conduct of funeral procession).

There are, in short, many explanations for a party's decision not to call a particular expert that may have nothing to do with a party's fear that the expert will reveal prejudicial information. See Anderson, supra, 158 N.J. Super. at 395 (holding that in absence of evidence that missing expert had superior knowledge, defendant's application for Clawans charge "constituted an inappropriate endeavor to have the jury draw an adverse inference against [its codefendant] simply because he chose not to use at trial a witness he had earlier identified as a potential expert witness").

Thus, when the witness whom a party declines to call at trial is an expert rather than a fact witness, the factors that may necessitate an adverse inference charge addressing the absence of a fact witness are unlikely to be germane. Accordingly, a Clawans charge will rarely be warranted when the missing witness is not a fact witness, but an expert.[7]

C.

In determining whether this case presents the exceptional situation in which the absence of an expert witness warrants a

_____

[7] If a Clawans jury instruction is not given with respect to a witness, counsel should not be permitted to argue to the jury that it should draw an adverse inference from the absence of the witness. State v. Hill, 199 N.J. 545, 560-61 (2009); State v. Driker, 214 N.J. Super. 467, 472 (App. Div. 1987).

34

Clawans charge, the Court is guided by the four-part standard adopted in Hill, supra, 199 N.J. at 561-62.[8]

In accordance with Hill, a trial court considering an adverse inference charge must first determine whether "the uncalled witness is peculiarly within the control or power of only the one party," whether "there is a special relationship between the party and the witness" and whether "the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give." Id. at 561 (internal quotation marks omitted).

In this case, there is no evidence that either Dr. Sharetts or Dr. Hayken were in defendants' exclusive control and thus unavailable to testify for plaintiff. As the Court held in Fitzgerald v. Stanley Roberts, Inc., "no party to litigation has 'anything resembling a proprietary right' to any witness' evidence." 186 N.J. 286, 301 (2006) (quoting Cogdell v. Brown, 220 N.J. Super. 330, 334 (Law Div. 1987), certif. denied, 114 N.J. 517 (1989)). There, the Court noted that "[b]y declaring that an expert witness will be produced at trial and providing the expert's identity and opinion to another party, as required

_____

[8] In the instant case, the trial court did not require plaintiff to make a showing with respect to the factors set forth in Hill, and did not discuss them when it granted plaintiff's application for a Clawans charge. On appeal, the Appellate Division applied the Hill standard to reverse the trial court's determination. Washington, supra, 430 N.J. Super. at 130-31.

by Rule 4:10-2(d)(1), the original proponent has waived his claim that the information is privileged." Id. at 302. Under Fitzgerald, "access to [a] testifying witness is allowed and the adversary may produce a willing expert at trial." Id. at 302.[9] Accordingly, if a party decides not to call an expert witness whose identity and report have been disclosed, and who possesses factual information relevant to the case, the principle set forth in Fitzgerald may permit the adversary to call the expert and present the evidence at trial.

Here, by virtue of the expert witnesses' reports, plaintiff was on notice prior to trial of the results of the physical examinations conducted by the experts, and of their respective opinions. Following defendants' pretrial announcement that they would not call Dr. Hayken to testify, and their notification to plaintiff during the trial that Dr. Sharetts would not testify on their behalf, plaintiff was in a position to contact the experts and seek to present their testimony at trial, but did

---

[9] The rule of Fitzgerald applies only to expert witnesses who are designated by a party to testify at trial, not to consulting experts who are not named as trial witnesses. In Fitzgerald, the Court reaffirmed the rule articulated in Graham, supra, 126 N.J. at 373, but distinguished Graham from the case before it. In Graham, the Court held that a consulting expert who has not been designated as a party's trial expert witness is prohibited from testifying on behalf of the adversary of the party who retained him or her, absent "exceptional circumstances" that would authorize discovery of the consultant's identity and opinion under the standard of Rule 4:10-2(d)(3). Ibid. In Fitzgerald, supra, the Court held that the rule of Graham "has no applicability to a testifying witness." 186 N.J. at 301.

not do so.  Accordingly, the first factor identified in Hill weighs against the grant of an adverse inference charge.

The second consideration set forth in Hill is whether "the witness is available to [the party against whom the adverse inference charge is sought] both practically and physically." Hill, supra, 199 N.J. at 561 (internal quotation marks omitted). Before the trial court granted plaintiff's application for a Clawans charge, defendants' counsel never suggested that either expert witness was unavailable, or sought an adjournment to accommodate the witnesses' schedules.  It was not until the argument of a post-trial motion that defendants revealed for the first time that Dr. Hayken had been unavailable to testify at trial.  Defendants never suggested that their other expert, Dr. Sharetts, was unavailable to testify, and the record does not reveal whether he would have appeared at trial if called by defendants.  Thus, it is unclear whether these witnesses were available to appear at trial.  Applied to this case, the second Hill factor is inconclusive.

The third consideration identified in Hill is whether the missing witnesses' testimony would have "elucidate[d] relevant and critical facts in issue."  Ibid. (internal quotation marks omitted).  In this case, each expert witness examined plaintiff, each independently developed factual information and opinions regarding this case, and each disclosed factual information as

37

well as his opinion in his report. Significantly, plaintiff was also examined by Dr. Rosen, and was available to be examined again at her counsel's direction or by court order. Nonetheless, there was sufficient evidence in the experts' reports to support a finding that the testimony of Dr. Sharetts and Dr. Hayken would have elucidated certain relevant facts. Accordingly, the third factor of Hill weighs to some extent in favor of an adverse inference charge.

Finally, the Court directed in Hill that trial courts must consider whether the missing witness's "testimony appears to be superior to that already utilized in respect to the fact to be proven." Ibid. (internal quotation marks omitted). In the case of an expert, this factor requires that the court determine whether the missing witness offers factual information superior to the evidence available from other sources. See Anderson, supra, 158 N.J. Super. at 395 (noting lack of evidence in support of conclusion that expert designated, but not called, by defendant "had knowledge superior to that of [the codefendant's expert] . . . regarding the manufacture and design" of product at issue). Nothing in the record suggests that the testimony of Dr. Sharrets or Dr. Hayken would have been superior to the expert testimony already before the jury. Plaintiff presented the testimony of her treating physician, who examined and treated her five times between February 2007 and October 2010,

and recommended her course of treatment. We share the Appellate Division's view that the defense experts' evidence was "merely corroborative or cumulative to plaintiff's proofs," and that this fourth Hill factor "suggests a rejection of the request for a missing-witness charge." Washington, supra, 430 N.J. Super. at 131.

Accordingly, the Court concurs with the Appellate Division that the trial court erred when it granted plaintiff's application for an adverse inference charge pursuant to Clawans. The four factors identified in Hill do not support a Clawans charge when applied to the record before the Court. This case does not present the rare circumstance in which a party's decision not to call an expert witness justifies a Clawans charge. The trial court erred when it granted plaintiff's request for an adverse inference charge in this case.

Moreover, that error was not harmless, but reversible. The trial court's adverse inference charge strongly suggested to the jury that defendants did not call their witnesses because they feared their testimony.[10] That error was compounded when

_____

[10] If the trial court intended the Clawans charge to serve as a sanction for defendants' trial counsel's representation to the jury in his opening statement that the evidence would establish that plaintiff sustained no injuries in her December 20, 2006 accident, it gave no such indication in its brief discussion of the charge. In any event, an adverse inference charge would not be an appropriate remedy for a mischaracterization of the evidence in an opening statement. Given the evidence before the

39

plaintiff's counsel argued to the jury in summation that defendants had declined to call Dr. Hayken because they feared his testimony.  We agree with the Appellate Division's observation that by virtue of the authority of the trial judge supporting the adverse inference, "the harm to defendants was palpable."  Ibid.

Accordingly, the Appellate Division properly reversed the trial court's judgment.  Defendants are entitled to a new trial.

IV.

The judgment of the Appellate Division is affirmed, and the case is remanded to the trial court for a new trial in accordance with this opinion.

---

jury that plaintiff was injured in the 2006 accident, any claim to the contrary by defendants' counsel was subject to effective rebuttal by plaintiff's counsel in summation.

SUPREME COURT OF NEW JERSEY

NO.   __A-10___                                    SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STEPHANIE WASHINGTON,

       Plaintiff-Appellant,

                  v.

CARLOS A. PEREZ, OLYMPIA
TRAILS and OLYMPIA TRAILS BUS
COMPANY,

       Defendants-Respondents.


DECIDED          September 10, 2014
_____
               Chief Justice Rabner                    PRESIDING
OPINION BY _____Justice Patterson_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM/REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1